## MURFEY, BLOSSOM & CO v STATE ex Fulton (now SQUIRE)

Ohio Appeals, 8th Dist, Cuyahoga Co

No 14796. Decided Dec 23, 1935

Garfield, Cross, Daoust, Baldwin & Vrooman, Cleveland, for plaintiff in error.

M. F. Mooney, Cleveland, for defendant in error.

## OPINION

By TERRELL, J.

The Superintendent of Banks in this action had named as defendants several hundred stockholders among whom was Murfey, Blossom and Company. At the outset of the trial and as pertaining to the claim against Murfey, Blossom and Company, a jury trial was demanded by it. The court denied this request on the ground that an action of this kind to enforce a double liability of stockholders was a special proceeding under the statute and in the nature of an action in equity and therefore defendant had no right to a trial by jury.

The majority of this court is of the opinion that the trial court was in error in this ruling. This is an action for money only. The liability of the defendant, if any, is individual. An issue of fact as to whether or not the defendant was a stockholder within the purview of the statute creating the liability is a question that should have been presented to a jury.

Sec 11379 GC reads as follows: "Issues of law must be tried by the court, unless referred as hereinafter provided. Issues of fact arising in action for money only, or specific real or personal property, shall be determined by a jury, unless a jury trial be waived, or a reference be ordered as hereinafter provided."

There is no ground for the invocation of the jurisdiction of a court of equity in this case. It is purely and simply an action for money only. There was a one hundred percent assessment made against all stockholders in said bank. If the defendant was a stockholder within the purview of the statute it was liable for the full one hundred percent assessment. The jury trial was not waived but was in fact demanded.

As to the right of trial by jury in this class of cases in Ohio the question has not been before our courts many times. In a late case, however, of Baumgartner v Fulton, 48 Oh Ap page 5, (16 Abs 71) it is suggested that defendant had the right of trial by jury. In Kennedy v Gibson, 8 Wallace, 498, at page 505, as mentioned in the Baumgartner case, it was held:

"The liability of the stockholders is several and not joint. The limit of their liability is the par of the stock held by each one. Where the whole amount is sought to be recovered the proceeding must be at law. Where less is required the proceeding may be in equity * * *."

It is contended by counsel for the Superintendent that the only right of trial by jury that is held inviolate under the terms of the Constitution is the right to have such cases tried by a jury as were in contemplation as jury cases at the time of the adoption of the Constitution. Counsel further contends that a cause of action similar to the one of this suit, was not known at the time of the adoption of the Constitution of Ohio in 1802. It first appears in the Constitution of 1851, which was amended in September of 1912.

It may be true that stockholders' double liability was not known in 1802 at the time of the adoption of the Constitution. There are, however, hundreds of new and different kinds of causes of action at this time that were not directly existing at the time of the adoption of the Constitution which are triable to a jury. However, in its fundamental form this cause of action was known at the time of the adoption of the Constitution. The relation of a stockholder to his company, his associate stockholders and the creditors of the Company, is a relation that arises out of contract. The stockholders' double liability is created by the Constitution and by statute and by the force thereof attaches itself to every stockholder's contract when he becomes a stockholder. So it can be logically stated that this liability of a stockholder arises out of the stockholder's contract. It will not be denied that an action for money only, on contract, existed and was tryable to a jury at the time of the adoption of the Constitution.

Nor are we without the benefit of decided cases upon this very subject:

The case of Hawkins v Furnace Company, 40 Oh St 514, was an action to enforce stockholders' liability. The court therein says this liability "embraces the elements of contract."

In this Hawkins case, above, is cited the case of Carrol v Green, 92 U. S. 509, which was also an action on stockholders' liability. The court held that the statute of limitations as for implied assumpsit applied as to the liability, clearly recognizing it arose under contract.

In Brown v Hitchcock, 30 Oh St 678, which was a case concerning stockholders' liability, the court quoted with apparent approval from the case of Corning v Mc-

Cullough as follows: "It is virtually and in effect a liability on contract and the mutual agreement of the parties; not indeed in form an express personal contract, but an agreement of equally binding obligation."

The same principle is laid down by the Supreme Court of the United States in Hawthorne v Calef, 2 Wall, 10, wherein it was held that a statute impairing the right of existing creditors to resort to such liability of stockholders for payment was void as impairing the obligation of contract. See also Cohiltree v Railroad, 21 Wall, 249, 252.

In Norris v Wrenschall, 34 Md. 496, and in Hager v Cleveland, 36 Md. 476, the stockholders' liability to creditors is held to be in the nature of a contract. The court says: "It is a debt under the statute due from the stockholders to the creditors, springing out of and co-existent with the contract between the corporation and the creditors."

It was held in Wisconsin under statutes imposing superadded liability on bank stockholders "equally and ratably, not one for another," the stockholders' liability is several, not joint, and they may be proceeded against in separate actions. Schwenker v Bekkedal, 204 Wis. 546; 236 NW 581, and under this case the right of trial by jury was accorded to the defendant, although the suit was permitted against all of the stockholders in the same action.

If courts extend the rule of procedure and allow the Superintendent to bring one action against all of the stockholders for the purpose of convenience and the avoidance of a multiplicity of suits and the saving of expense, it is no reason that the right of trial by jury should be denied to the defendants.

The statutes of the State of Ohio imposing stockholders' double liability pertaining to banks is patterned after the United States statute. Under the United States statute the question of actual ownership of the stock is one for the jury. Rankin v Fidelity, 189 U. S. 242.

It is well recognized by our own Supreme Court that "where plaintiff prays a personal judgment and foreclosure of a conditional land contract, the defendant is entitled to have the issue of personal judgment, if such issue is joined submitted to the determination of a jury, and a denial of that right by the trial court is error. **MacKenzie et v Stuber, 119 Oh St 588.**

Counsel for the Superintendent contends that to allow each of the hundreds of defendants the right of trial by jury would make his task extremely difficult. The difficulty of the situation is no reason for denying one a constitutional right. Counsel for the Superintendent over-estimates the difficulty that would be encountered in identifying the stockholders. The persons whose names appear on the stock register are prima facie stockholders, and thereafter the task would devolve upon such named person to make a reasonable defense to show that he was ont a stockholder notwithstanding the presence of his name on the stock register.

Counsel for the Superintendent, in order to sustain his position that defendant has no right of trial by jury, used the following language in his brief,

"The following are some of the cases wherein it was held that the provision as to jury trial did not apply:
**Hageny v Cohen, 29 Oh St 83**
**Rowland v Entrekin, 27 Oh St 47**
**Ellsworth v Holcomb, 28 Oh St 66**
**Converse v Hawkins, 31 Oh St 209**
**Passig v State ex, 95 Oh St 232."**

We have read those cases and have come to the conclusion that not one of them supports counsel's position. Each one of these cases is a very forceful argument why in the case on review a jury trial should have been allowed. We will take up for consideration briefly each one of these cases:

**Hagney v Cohen, 29 Oh St 83**, above, is a case wherein a guardian for a drunkard was appointed. Counsel for defendant demanded a jury trial. The court refused a jury trial. This was a special proceeding to appoint a guardian.

**Rowland v Entrekin, 27 Oh St 47** above, was a case for the reformation of a defective lease and a claim for money thereunder. The claim for money depended upon the reformation of the lease. This is purely an equitable action.

**Ellsworth v Holcomb, 28 Oh St 66**, above, was a case involving a reformation of a written instrument and money. The claim for money depended upon the reformation of the written instrument. Likewise this was purely an equitable action.

**Converse v Hawkins, 31 Oh St 209**, above, was an action for injunction restraining defendant from obstructing and from continuing obstructions already placed upon an alleged road in which plaintiff claimed a special use and included also a claim for damages occasioned by such obstructions. This was purely an equity action. The court held it did not change the action to an action at law because incidentally a

claim for money damages for such obstructions was also made in the case.

**Passig v State ex**, 95 Oh St 232, above, was an action under the Workmen's Compensation Law under §27 wherein an injured employee brought action for such injuries. Contrary to the apparent assertion of counsel for Superintendent, the court in this case held that the defendant employer was entitled to a trial by jury. This action under Workmen's Compensation Act was not known at common law nor when the Constitution of Ohio was adopted in 1802.

These cases ought to be decisive of the right of defendant in the case on review to have the right of trial by a jury. On page 242 of the Passig case above the court used this language:

"The action against the employer to recover the amount so ascertained and fixed must be brought in a court of general jurisdiction and the defendant employer is entitled to a trial by jury."

The fourth syllabus of the Passig case above reads:

"On the trial of an action brought pursuant to §27 of the same act (Workmen's Compensation Act) against an employer who has failed to comply wtih the law and with the order of the commission, the defendant employer is entitled to a trial by jury; but on the finding of the issues in favor of plaintiff, the amount of the verdict will be the sum fixed by the Commission under the schedule provided in the statute."

So it follows in a stockholders' superadded liability case if the issues joined are found in favor of the Superintendent by the jury the amount of the verdict will be the amount fixed by the Superintendent in the assessment which in the present case would be one hundred percent at par value of the stock found by the jury to be owned by defendant.

We are, therefore, of the opinion that the trial court erred in refusing defendant the right of trial by jury upon the issues joined in this case.

We now come to a consideration of the next assignment of error. The trial court, on motion of the Superintendent, struck out all the evidence on which Murfey, Blossom and Company based its contention that it was not a stockholder, and refused to permit it to prove certain facts bearing on that contention. It is claimed that in these rulings the trial court was in error.

The basis of bank stockholders' double liability is a provision in the Constitution which has been enacted into §710-75 GC, which reads as follows:

"**Sec 710-75 GC.** Stockholders of banks shall be held individually responsible, equally and ratably, and not one for another, for all contracts and engagements of such bank, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares.

"The stockholders of any bank who shall have transferred their shares or registered the transfer thereof within sixty days next before the failure of such bank to meet its obligations, or with knowledge of such impending failure, shall be liable to the same extent as if they had made no such transfer, to the extent that the subsequent transferee fails to meet such liability; * * *"

The question that immediately presents itself is, who are stockholders? The most obvious answer would be, anyone who owns and holds stock. But is that the correct answer? Some years ago the statutes defined the word "stockholder" as used in the statute creating stockholders' liability as follows:

"**Sec 8689 GC.** The term 'stockholder' as used in the three next preceding sections, shall apply not only to persons who appear by the books of the corporation to be such, but also to an equitable owner of stock, although on the books it appears in the name of another."

This statute apparently has been repealed in 112 O. L. 58, and no other statute takes its place. While this statute was in existence many cases involving stockholders' liability were decided and are recorded in the law reports of decided cases. In many of these cases the pronouncement is made that not only the stockholder whose name is registered upon the stock register but also the real owner to whom the stock might have been transferred but not registered, is also liable. These holdings were evidently based upon the existing statutes at that time. Some courts, however, continue to quote these holdings regardless of the present statutes.

The stockholders of a corporation are not personally liable for its debts, in the absence of specific agreement or in the absence of some provision of its charter or a statute. **Carr v Inglehart**, 3 Oh St 457.

However, it seems to be the holding of the courts that he who allows his name

to appear upon the stock register of a bank as a stockholder is, at least prima facie a stockholder, although he may not in fact own any stock. But we believe that the extent to which this doctrine should be applied is only to create a prima facie liability.

Any person whose name appears upon the stock register should be entitled to enter a defense and show that he has transferred his stock more than sixty days before the failure of the bank and under such circumstances that he would be reasonably justified in assuming that the officials of the bank would register the stock thus transferred in the name of the new owner upon the stock register of the bank.

In this case the evidence clearly shows that the stock in question was owned by Smith, the president of the bank and held by the broker as pledgee, and that Smith negotiated and concluded a sale of said stock to The Standard Corporation of which he was president, and that he directed the broker to have the stock transferred into the broker's name and endorsed in blank and delivered to The Standard Corporation to complete the sale.

The stock certificates were delivered to Lois Law, the agent and employee of the bank and the Standard Corporation and the money paid to the broker, thereby completing the transaction. Full knowledge of this whole transaction is charged to the bank, through its president Smith and its employee in the stock department Lois Law. The broker could not do any more toward effecting a transfer on the registry of this stock. It had no right to make any entries upon the registry of the bank, that part of the business was certainly reserved to the bank itself. All the circumstances of this transaction would lead any reasonable mind to conclude that the broker was justified in assuming that said stock would be transferred upon the stock registry of the bank.

It is contended by counsel for the Superintendent that the theory upon which the registered stockholder should be held is that of estoppel. He contends that one who lends his name as a stockholder to the business of a corporation is presumed to induce customers of the corporation to deal with it on the strength of his name, and further that after having taken the apparent ownership by having the stock registered in his name he thus becomes entitled to receive dividends, vote at elections, and enjoy all the privileges of ownership, and that therefore it would be in-

equitable to allow him to refuse the responsibility of a stockholder.

Now considering the reasons just set forth as the contention of counsel for the Superintendent, it is not exactly known how any registered stockholder in Ohio holds himself out to the public as such by merely having his name on the stock register. The stock register of a bank is not open to the public. It is only open to stockholders and officials, and this is provided by statute. There is no evidence that any creditor dealt with the bank on the strength of Murfey, Blossom and Company being a stockholder.

The creditors are presumed to know the terms of the Uniform Stock Transfer Act which permits the valid transfer of stock without having it registered upon the books of the company. The creditors are then charged with the knowledge that the stock register does not always represent the true ownership of the stock.

The next reason advanced for holding the registered stockholder is that thereby he becomes entitled to receive dividends. The register of stockholders is prima facie evidence that those appearing thereon are entitled to receive dividends. But this presumption of ownership may be overcome by the facts. In this case the bank knew through its president and its employes that Murfey, Blossom and Company was not a stockholder and was not entitled to receive dividends. There was no risk in this case that any dividends would be mistakenly paid to it. There is no reason in this assignment why Murfey, Blossom and Company should be estopped to assert that it was not a stockholder.

The next reason advanced is that Murfey, Blossom and Company might vote at elections and enjoy the privileges of stockholders. The same reason above that would effectually deny them the right of recognition as stockholders by the company in the right to receive dividends would apply in this instance. The bank, with the full knowledge of this transaction, through its president and employees would not be lulled into the belief that Murfey, Blossom and Company were stockholders and thereby accord to them the right to vote or enjoy any of the privileges of stockholders.

As cited by counsel for Murfey, Blossom and Company, a clear expression of the law on this point is found in the case of Siedel v Shaw, 7 SW (2) 671 (Texas, 1928). We quote from the court's opinion as follows:

"The reason given for holding the stockholder of record liable in that class of cases

—that is, that provision requiring the transfer to be made only upon the books of the corporation are for the purpose of enabling creditors to determine therefrom who are stockholders and consequently estop one who permits his name to appear as such from denying to them that he occupied that relation—does not exist in his case, because no such provision appeared; the rule therefore fails with the absence of the reason for it. Plainly, if there was no requirement of that nature affecting a transfer of this stock, the creditors of this bank on the one hand, by assuming that there was, had no right to deal with it on the basis of S being a stockholder after the actual sale of his interest, nor upon the other, and for the same reason, was he estopped from denying that he then in fact occupied that relation."

The presumption of liability by the presence of a name on the stock register would be rebutted if a bona fide sale had been made and the transferrer had performed every duty which the law imposed upon him.

Earle v Carson, 188 U. S. 42.

Whitney v Butler, 118 U. S. 655.

We will quote from the syllabus of the last mentioned case as follows:

"A an owner of shares in the capital stock of a national bank, employed a broker and auctioneer to sell them by public auction. They were bid off by B, who paid the auctioneer for them, and received from him the certificate of stock, with a power of attorney for transfer duly executed in blank. The auctioneer paid the purchase-money to A. B was employed by the president of the bank to make this purchase for a customer of the bank, who had made a deposit in the bank for the purpose, and he delivered the certificate and the power of attorney to the president, and received from the bank the money for the purchase. No formal transfer of the stock was made on the transfer-book of the bank. Shortly afterwards the bank became insolvent, and eventually went into the hands of a receiver, who made an assessment on the stockholders under the provisions of Rev. Stat. §5205, to make up the deficiency in the capital. Until after the stoppage A had no knowledge as to the purchaser, or as to the neglect to formally transfer the stock, and no reason to suppose that the transfer had not been made. In an action against A, by the receiver, to recover the amount of the assessment upon his said stock, Held: That the responsibility of A

ceased upon the surrender of the certificates to the bank, and the delivery to its president of a power of attorney sufficient to effect, and intended to effect, as the president knew, a transfer of the stock on the books of the bank."

We quote from the opinion of Justice Harlan (p 662) as follows:

"It was suggested in argument that the defendants should have seen that the transfer was made. But we were not told precisely what ought to have been done to this end that was not done by them and their agents. Had anything occurred that would have justified the defendants in believing, or even in suspecting, that the transfer had not been promptly made on the books of the bank, they would, perhaps, have been wanting in due diligence had they not, by inspection of the bank's stock register, ascertained whether the proper transfer had in fact been made. But there was nothing to justify such a relief or to excite such a suspicion. Their conduct was under all the circumstances, that of careful, prudent, business men, and it would be a harsh interpretation of their acts to hold (in the language in some of the cases, when considering the general question under a different state of facts) that they allowed or permitted the name of Whitney to remain on the stock register as a shareholder. We are of opinion that, within a reasonable construction of the statute, and for all the objects intended to be accomplished by the provision imposing liability upon shareholders for the debts of national banks, the responsibility of the defendants must be held to have ceased upon the surrender of the certificates to the bank and the delivery to its president of a power of attorney sufficient to effect, and intended to effect, as that officer knew, a transfer of the stock, on the books of the association, to the purchaser."

In the case of Earle v Carson, 188 U. S. 42, we quote from syllabus 1 as follows:

"The presumption of liability of a stockholder of a national bank begotten by the presence of the name on the stock register may be rebutted if the jury finds the fact to be that of a bona fide sale of the stock had been made and every duty had been performed which the law imposed in order to secure a transfer on the registry of the bank. * * *"

The doctrine of estoppel is usually applied to cases where the party sought to be estopped was guilty of some negligence or

lack of diligence. If he is guilty of some negligence or lack of diligence he must take the consequences of his own acts which mislead others to act to their injury. We maintain that the doctrine of estoppel was never applied to a case where the person sought to be estopped was guilty of no negligence or lack of diligence whatsoever. When Murfey, Blossom and Company in accordance with instructions from Stirling Smith endorsed the stock standing in its name on the books of the bank and delivered it to the Standard Corporation and received the money due to it from Stirling Smith, it did all that any prudent person could be expected to do. In all good reason it had a right to expect that these two separate entities, which were in fact one, would take care of the necessary mechanical operations to cause a transfer upon the books of the Bank.

As noted above, there is no present law of Ohio which requires transfer on the books of the corporation as a prerequisite to the transfer of ownership. That requirement did exist under the old statutes which have been repealed and have not been in existence since the passage of the Uniform Stock Transfer Act.

From the foregoing it follows that we hold that Murfey, Blossom and Company was entitled to allege as a defense and make proof thereof that it was not a stockholder of said bank, notwithstanding that its name appeared upon the stock register. We hold that the trial court was in error when the testimony to sustain the defense alleged was stricken out and when the court refused to allow the defendant to introduce further proof to substantiate said defense.

The judgment of the trial court is reversed and this case is remanded for further proceedings according to law.

LEVINE, J, concurs in judgment.
LIEGHLEY, PJ, dissents.