**CINCINNATI BELL INC., Plaintiff,**

v.

**ANIXTER BROTHERS INC.,
et al., Defendants.**

No. C–1–93–0871.

United States District Court,
S.D. Ohio,
Western Division.

Oct. 28, 1999.

Frederick Jaeger McGavran, Frost & Jacobs, Terrence Lee Goodman, Stanley Morris Chesley, Paul M. De Marco, Waite, Schneider, Bayless & Chesley, Cincinnati, OH, for Cincinnati Bell Telephone Co., plaintiff.

Jerome Charles Randolph, Keating, Muething & Klekamp, Cincinnati, OH, Frederick J. Sperling, Schiff Hardin & Waite, Chicago, IL, Lawrence Robert Elleman, Dinsmore & Shohl, P.L.L., Cincinnati, OH, for Anixter Bros. Inc., Anixter–Cincinnati, defendants.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment (doc. 75); Defendants' Response (doc. 78); Plaintiff's Reply (doc. 84); Defendants' Motion for Leave to File a Supplemental Response to Plaintiff's Motion for Partial Summary Judgment *Instanter* (doc. 85); Defendants' Renewed Motion for Summary Judgment (doc. 77); Plaintiff's Response (doc. 79); and Defendants' Reply (doc. 83). The Court also held a hearing on this matter on January 28, 1999 (doc. 89).

## BACKGROUND

This is a contract dispute between the parties to a joint venture called Anixter–Cincinnati (hereinafter, "the Joint Venture") (doc. 2). Plaintiff initially filed suit against Defendants in the Hamilton County Court of Common Pleas on November 16, 1993 (*Id.*). However, Defendants removed this action to federal court on December 14, 1993 (*Id.*). In this matter, Plaintiff seeks the following remedies: (1) an accounting of all of the assets and profits relating to the CATV business; (2) compensatory and punitive damages; (3) disgorgement of profits; (4) restitution for unjust enrichment; and (5) reasonable attorney fees and expenses (*Id.*).

This controversy can be traced back to July 1, 1983, when Cincinnati Bell, Inc. (hereinafter, "Plaintiff" or "CBI"), an Ohio corporation with its principal place of business located in Cincinnati, Ohio, and Anixter Brothers, Inc.[1] (hereinafter, "Defendants" or "Anixter"), a Delaware corporation with its principal place of business in Skokie, Illinois, formed an unincorporated partnership/joint venture

1. The original Complaint also included the Joint Venture, Anixter–Cincinnati, as merely a nominal or formal party defendant.

2. Paragraph 3 to Amendment No. 3 of the JVA, states, in pertinent part, that:

(*Id.*). The Joint Venture was to be in full force and effect until its scheduled termination on December 31, 1993 (*Id.*). Anixter served as the appointed Manager of the Joint Venture throughout the term of the agreement (*Id.*).

The Joint Venture was governed by a Joint Venture Agreement (hereinafter, "the JVA") (*Id.*). The "Purpose and Scope" clause of the JVA states that the Joint Venture was formed: "(i) [T]o engage in the distribution of electrical wire and cable, C.A.T.V. [cable television] and telephone and communications products by buying, warehousing and selling such products, (ii) to engage in the manufacture of preassembled wires and to refurbish telephone equipment, and (iii) to engage in the warehousing of customer-owned products" (doc. 75, Ex. A). The JVA also contained a choice of law provision stating that, "[t]his Agreement and the rights of the Venturers shall be governed by and construed and enforced in accordance with the laws of the State of Ohio" (*Id.*). The JVA provides that "[a]ll decisions with respect to the *general overall management* and control of the Joint Venture shall be made and agreed to unanimously by the Venturers and shall be binding on the Joint Venture and all Venturers" (*Id.*). In addition, the JVA contains an integration clause stating that this "[a]greement contains the entire understanding between the parties and may not be orally changed or modified" (*Id.*).

On August 1, 1987, Anixter and CBI mutually agreed to change the Joint Venture's geographical territory (hereinafter, "Area of Primary Responsibility) from parts of Ohio, Indiana, and Kentucky to all of Ohio and Kentucky, but none of Indiana" (*Id.*). Anixter drafted an amendment to the JVA to reflect the agreed-upon geographical changes to the original Area of Primary Responsibility[2] (*Id.*).

Anixter and the Joint Venture agree that, effective as of August 1, 1987, the Joint Venture will purchase the Cleveland business from Anixter and the Joint Venture will sell the Indianapolis business to Anix-

This amendment became known as "Amendment No. 3" (*Id.*). Amendment No. 3 affirmed that "[a]ll other terms of the Joint Venture Agreement shall remain in effect" (*Id.*). The amendment was subsequently signed by the then-presidents of CBI and Anixter (Id.).

Sometime after the signing of Amendment No. 3 to the JVA, Anixter transferred the remaining cable television ("CATV") business from the Joint Venture and its Area of Primary Responsibility (i.e., Ohio and Kentucky) into a division of Anixter called ANTEC (doc. 2). In mid-1993, Itel, Anixter's parent company, announced that ANTEC would be taken public through an Initial Public Offering (hereinafter, "the ANTEC IPO") (doc. 75, Ex. E). Plaintiff alleges that the proceeds from the ANTEC IPO exceeded $350 million and that "neither the Joint Venture nor CBI ever received any portion of the proceeds of the ANTEC IPO" (doc. 75). Upon the end of discovery, Plaintiff filed a Motion for Partial Summary Judgment against Defendants on the issue of liability as to Counts III (Conversion) and IV (Unjust Enrichment). Plaintiff asserts that there are no genuine issues of material fact, and that Plaintiff is entitled to judgment in its favor as a matter of law (doc. 75). Shortly thereafter, Defendants filed a Response (doc. 78) and Plaintiff followed with its Reply (doc. 84). Defendants subsequently requested Leave to File a Supplemental Response to Plaintiff's Motion for Partial Summary Judgment *Instanter* pursuant to Local Rule 7.2(a)(2) (doc. 85). As of the date of this Order, Plaintiff has not filed an objection to Defendants' Motion.

At the same time Plaintiff filed its Motion for Partial Summary Judgment, Defendant's filed their Renewed Motion for Summary Judgment (doc. 77). Plaintiff's subsequently filed its Response (doc. 79), and Defendants' followed with their Reply (doc. 83).

ter, on terms mutually agreeable to both parties.

## STANDARD OF REVIEW

The narrow question that we must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Id.* at 321, 106 S.Ct. 2548; *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 405 (6th Cir. 1992); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Guarino,* 980 F.2d at 405.

As the Supreme Court stated in *Celotex,* the non-moving party must "designate" specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Guarino,* 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, " 'the designated portions must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.' " *Guarino,* 980 F.2d at 405 (quoting *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert.*

(doc. 75, Ex. A).

*denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990)).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir.1990).

## DISCUSSION

### I. *Defendant's Motion for Leave to File (doc. 85).*

In Defendants' Motion for Leave to File a Supplemental Response to Plaintiff's Motion for Partial Summary Judgment *Instanter* (doc. 85), Defendant argues that Plaintiff's Reply (*see* doc. 84) contains allegations that were not originally presented in Plaintiff's Motion for Partial Summary Judgment (*see* doc. 75). Specifically, Defendants assert that pursuant to Local Rule 7.2(a)(2), they should have an opportunity to respond to Plaintiff's allegations that Defendants are attempting to mislead the Court. Plaintiff alleged in its Reply that Defendants are engaged in a deliberate attempt to mislead the Court regarding some of the testimonial and documentary evidence that has been presented in this case. Defendants assert that their Motion meets the "good cause" requirement of Local Rule 7.2(a)(2), and that, therefore, they deserve an opportunity to explain why Plaintiff's allegations have no merit.

After reviewing this matter, pursuant to Local Rule 7.2(a)(2), the Court finds Defendants' Motion for Leave to File a Supplemental Response to Plaintiff's Motion for Summary Judgment *Instanter* (doc. 85) to be well-taken. However, our consideration of Defendants' Supplemental Response will be limited to the arguments addressing the new allegations contained in Plaintiff's Reply (doc. 84).

### II. *Plaintiff's Motion for Partial Summary Judgment (doc. 75).*

#### A. *The Parties Arguments*

In the instant matter, the parties agree that no factual dispute exists as to whether Defendants actually transferred the CATV business out of the Joint Venture and into ANTEC (*see* docs. 75, 78, and 84). The primary dispute centers around Paragraph 2 of Amendment No. 3 to the JVA ("Paragraph 2"). The only real issue before this Court is whether Paragraph 2 represents a unilateral transfer of the Joint Venture's CATV business to Defendants, or whether Paragraph 2 should be viewed as only one part of a "total package" of evidence representing an agreed-upon sale of the CATV business by the Joint Venture to Defendants (*Id.*).

According to Plaintiff, Defendants, in effect, unilaterally amended the JVA to provide for the unauthorized transfer of the CATV business from the Joint Venture to Defendants (doc. 75). Plaintiff asserts that no "agreement" actually existed for the sale of the CATV from the Joint Venture to either Anixter or ANTEC (*Id.*). Instead, Plaintiff argues that Amendment No. 3 was originally drafted to effectuate a "territory swap" to which CBI and Anixter had mutually agreed (*Id.*). Plaintiff's Motion for Partial Summary Judgment contends that "Anixter is now attempting to shoehorn into Amendment No. 3 a sale to Anixter of a valuable Joint Venture asset—the CATV business—which the language of Amendment No. 3 shows was never intended" (*Id.*). Plaintiff contends that the provisions of Amendment No. 3 are unambiguous. Plaintiff submits in its Motion that this dispute is a matter of contract interpretation, and, thus, is a legal question that the Court can decide on a motion for summary judgment (*Id.*).

In response, Defendants assert that they did not unilaterally amend the JVA, nor did Anixter engage in a "surreptitious defalcation" of the CATV business from the Joint Venture to its personal holdings (doc. 78). To the contrary, Defendants contend

that: (1) the parties discussed the purchase of the CATV business prior to August, 1987; (2) Plaintiff agreed to sell the CATV business to Defendants; (3) a method of payment was set up for the sale of the CATV business; (4) Defendants paid for the CATV business in accordance with the agreed-upon method of payment; (5) the JVA was amended in Paragraph 2 to specify the formula for payment to the Joint Venture of any future profits derived from the sale of CATV products ordered by customers within the new Area of Responsibility; and (6) Plaintiff, via the Joint Venture, knowingly accepted a total of $194,956.65 in payments for the CATV business from 1987 to 1993 (*Id.*). In addition, Defendants argue that "even assuming contrary to the evidence that a 'defalcation' occurrec, Cincinnati Bell suffered no damages' because Anixter credited the Join Vendure for all of the CATV sales ordered from the new Area of Primary Responsibility" (*Id.*).

Plaintiff counters that, since no written agreement exists between and Anixter providing that Anixter would purchase the Joint Venture's CATV business, there could not have been a valid transfer of the CATV business from the Joint Venture to Anixter in compliance with the Ohio Uniform Partnership Law (doc. 84). *See also* Ohio Rev.Code §§ 1775.20 and 1775.08. Plaintiff contends that the Court should not look outside the JVA and Amendment No. 3 for any extrinsic evidence of an agreement to purchase the CATV business from the Joint Venture, especially since the amendment is unambiguous on its face (*Id.*). In support of this proposition, Plaintiff cites to *Schachner v. Blue Cross and Blue Shield of Ohio*, 77 F.3d 889, 893 (6th

Cir.1996) ("Thus, in this circuit, before a district court can consider extrinsic evicence of the parties intent, it must find an ambiguity on the face of the contract.").

## B. The CATV Business: Conversion vs. Purchase

In its Complaint, Plaintiff alleges that "[w]ithout the knowledge or autorization of CBI, Anixter converted the business of buying, warehousing, selling and distributing C.A.T.V. and traferred that business to ANTEC"[3], and Plaintiff claims that it is entitled to an accounting, compensatory damages, and punitive damages for Defendants' alleged conversion (*see* doc. 2). Plaintiff points to the terms and provisions of Amendment No. 3 in order to prove that no agreement existed between the parties to the Joint Venture for the purchase of the CATV business by Anixter. Plaintiff also asserts a closely-related claim against Defendants for unjust enrichment due to Defendants' alleged "conversion of the C.A.T.V. business" from the Joint Venture (*Id.*).

In contrast, Defendants aver that there was never a conversion of the CATV business from the Joint Venture, but rather a purchase of that asset from the Joint Venture to Anixter with the knowing participation and agreement of CBI (doc. 78). Defendants direct the Court's attention to not only Amendment No. 3, but also to the "total package of agreements" allegedly indicating that there was indeed a purchase, and not a conversion (doc. 78, Ex. 2)[4]. This additional evidence includes the deposition testimony of: (1) Anixter's former Vice–President and Controller;[5] (2) Anixter's former General Counsel and former President;[6] (3) Anixter's former

---

**3.** ANTEC is a corporation formed by Itel, Anixter's parent corporation (*see* doc. 2).

**4.** During the December 5, 1997 deposition of Bruce Van Wagner (the former Chairman of both Anixter and ANTEC), he stated that Amendment No. 3 was a "part of the total package of agreements" between CBI and Anixter (doc. 78, Ex. 2). In addition, Mr. Wagner asserts that in order to gain an understanding of the entire transaction it is nec-

essary to examine all of the contemporaneous documents (*Id.*).

**5.** The testimony of Albert Smith alleges that he discussed Anixter's purchase of the Joint Venture's CATV business with representatives of CBI in 1987 and that CBI agreed to the purchase (doc. 78, Ex. 1).

**6.** The deposition testimony of Larry Margolis, John Pigott, and Albert Smith each alleges

President, Chief Operating Officer, and Chief Financial Officer;[7] and (4) CBI's former President, Chief Executive Officer and Chief Financial Officer.[8]

As guidance in resolving the dispute, Plaintiff cites to *NPF IV, Inc. v. Transitional Health Servs.*, 922 F.Supp. 77, 81 (S.D.Ohio 1996), for the proposition that a claim for conversion exists "where the plaintiff owned the property at the time of the conversion, the defendant dispossessed the plaintiff of his or her property rights, and damages resulted" (doc. 75). Plaintiff contends that the central issue on which its Motion hinges "involves Anixter's proffered defense to Counts III and IV—[namely] that CBI agreed to the transfer;" and that the agreement, according to Defendants' own testimony, could be found in Paragraph 2 to Amendment No. 3 of the JVA (*Id.*). Plaintiff argues that, since Amendment No. 3 contains no such terms, provisions, or references indicating a sale or purchase of the CATV business from the Joint Venture, there simply was no agreed-upon sale by the parties (*Id.*).

> that Anixter paid the Joint Venture, without any objection from CBI, more than $194,000 for the Joint Venture's CATV assets (doc. 78). In addition, the deposition testimony of Messrs. Margolis, Pigott, and Smith also alleges that Anixter made payments to the Joint Venture pursuant to the formula set forth in Paragraph 2 of Amendment No. 3 to the JVA (*Id.*). Defendants also allege in their Reply that all of the profits derived from the sale of CATV to customers ordering from the new Area of Responsibility went back into the Joint Venture from 1987 until its scheduled termination on December 31, 1993 (*Id.*).

7. The testimony of Dennis Sullivan and CBI's own documentary evidence are alleged to reveal that CBI knew that Anixter had established a separate division to make CATV sales and that Anixter was making the payments to the Joint Venture as called for by Paragraph 2 of Amendment No. 3 to the JVA (doc. 78, Ex. 3).

8. Defendant's stated that the testimony of Raymond Clark allegedly shows that CBI suffered no damages related to the Joint Venture's CATV business because the only value that the CATV business had in 1987 was a discounted stream of future earnings that terminated at the end of the Joint Venture (doc.

Thus, Plaintiff asserts, there are no genuine issues of material fact that prevent this Court from finding in favor of Plaintiff as a matter of law (doc. 84).

Nonetheless, Defendants counter that "[i]n a further effort to persuade this Court to view Amendment No. 3 out of context and in isolation, Cincinnati Bell ignores the testimony of Mr. Smith [former Anixter Vice–President and Controller] that the entire agreement between the parties regarding Anixter's purchase of the CATV assets is *not* reflected in Amendment No. 3 alone and that other documents also include the terms of that agreement"[9] (doc. 78). Moreover, Defendants contend that Plaintiff received more money from the transfer of the CATV business out of the Joint Venture and into Anixter than it would have received if the transfer had never taken place[10] (*Id.*). In addition, Defendants argue that Plaintiff cannot establish the element of damages for its conversion claims, and that, therefore, its Motion for Partial Summary Judgment must be denied (*Id.*).

> 78). Defendants further allege that the undisputed evidence proves that the Joint Venture received all of those future earnings (*Id.*).

9. The December 5, 1997 deposition testimony of Bruce Wagner (former Chairman of both Anixter and ANTEC) alleges that Amendment No. 3 was a "part of the total package of agreements" between CBI and Anixter, and repeatedly asserted that in order to gain an understanding of the entire transaction it is necessary to examine all of the contemporaneous documents (doc. 78).

10. Defendants bolster their no-damages (estoppel) defense by alleging that:

> In addition to receiving (1) $194,956.65 for the Joint Venture's CATV assets and (2) the profits derived from sales to customers ordering CATV products from within the Joint Venture territory, the undisputed evidence establishes that the Joint Venture received the additional benefits of being relieved of its obligations to pay the salaries of CATV salesman, to pay CATV related warehousing expenses, and to absorb any CATV losses (such as those incurred in 1990).
> (doc. 78).

After reviewing this matter, this Court concludes for the following reasons that Amendment No. 3, while not ambiguous, can be considered along with other select evidence submitted by the parties relating to the possible sale of the CATV business from the JVA to Anixter and then ultimately to ANTEC.

## C. *Contract Interpretation*

### 1. *Ambiguous vs. Unambiguous*

The first of two crucial issues before this Court is whether the contract language of Amendment No. 3 to the JVA—and specifically Paragraph 2—is ambiguous or unambiguous. In *Schachner*, the Sixth Circuit reviewed the district court's grant of summary judgment to an insurer based on the terms of the insurer's health plan contract. 77 F.3d at 893. The appellate court reviewed the district court's conclusions regarding the issue of ambiguity in the contract language *de novo*. The Sixth Circuit explains that a contract is ambiguous if:

> [I]t is subject to two reasonable interpretations. If a court determines that a contract provision is ambiguous, then it may use traditional methods of contract interpretation to resolve the ambiguity, including drawing inferences and presumptions and introducing extrinsic evidence.
>
> Courts may not, however, use extrinsic evidence to create an ambiguity. Rather, the ambiguity must be patent; that is apparent on the face of the contract. Only when the court has determined that the contract is ambiguous is a construction of the clause necessary. After a finding of ambiguity has been made, [extrinsic evidence] is admissible to aid in its interpretation.

*Schachner*, 77 F.3d at 893 (citations omitted); *see also Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1376 (6th Cir.1994) (finding that the language in a contract was reasonably susceptible to two reasonable interpretations); *Astor v. International Bus. Mach. Corp.*, 7 F.3d 533, 540 (6th Cir.1993) (holding that the parol evidence rule precluded former employees from relying on previous oral misrepresentations instead of the unambiguous written contract language); *Construction Interior Sys., Inc. v. Marriott Family Restaurants, Inc.*, 984 F.2d 749, 757 (6th Cir.1993) (finding that a contract's terminology must be given its plain and ordinary meaning as long as it does not result in manifest absurdity); *Potti v. Duramed Pharm., Inc.*, 938 F.2d 641, 648 (6th Cir.1991) (holding that the contract was unambiguous, and, therefore, that it was error to allow the trier of fact to interpret the contract).

The Sixth Circuit in *Schachner* reversed the district court's grant of summary judgment in favor of the insurer on the ERISA claim and found that:

> The [fact that] insured and insurer may disagree over whether a particular treatment or procedure falls within an insurance certificate's scope of coverage does not necessarily make the language of the certificate ambiguous. It is often necessary for health insurers to use broad language in drafting insurance contracts. It would be impracticable, if not impossible, to include an exhaustive list of the treatments and procedures covered by a general health insurance contract. The language is ambiguous only if, on its face, it admits of two different interpretations.

77 F.3d at 895.

However, the Sixth Circuit held very recently in a case involving a contract dispute, that even though a trial court may find a contract term or provision to be unambiguous, that those same terms and provisions may become ambiguous when read in light of all of the evidence presented. *See International Union v. BVR Liquidating, Inc.*, 190 F.3d 768, 773 (6th Cir. 1999) (citing *International Union v. Yard–Man, Inc.* 716 F.2d 1476 (6th Cir.1983)). The Sixth Circuit reasoned that if a contractual provision is found under the surrounding circumstances to be ambiguous, then the trial court may turn to extrinsic evidence to discern the intent of the parties. *Id.*

### 2. *Amendment No. 3*

Sixth Circuit precedent indicates that a contract's language must be found ambiguous as a matter of law before this Court can go beyond the four corners of an agreement in order to review extrinsic evidence. *See Schachner,* 77 F.3d at 893. With this in mind, we set forth the terms of Amendment No. 3 in its entirety below:[11]

### AMENDMENT NO. 3 TO JOINT VENTURE AGREEMENT DATED APRIL 20, 1983 BETWEEN ANIXTER BROS., INC. ("ANIXTER") AND CINCINNATI BELL SUPPLY CO. ("CINCINNATI BELL")

The parties agree as follows:

1.  Exhibit A to the Joint Venture Agreement, which sets forth the Area of Responsibility, is hereby amended to exclude all portions of the State of Indiana so that the State of Indiana is no longer a part of the Area of Responsibility, and to add the rest of the State of Ohio and the rest of the State of Kentucky so that the entire State of Ohio *and* the entire State of Kentucky become a part of the Area of Responsibility.

2.  **Anything in the Joint Venture Agreement to the contrary notwithstanding, when any Anixter location outside of the Area of Responsibility accepts an order from a customer ordering from within the Area of Responsibility, the Joint Venture will be compensated as follows:**

    a.  **Anixter will determine annually the percentage that the gross profit on sales of each such location into the Area of Primary Responsibility bears to each such location's total gross profit.**

    b.  **The percentage so calculated for each such location will be applied to that location's total pretax income, and the amount so determined will be promptly paid over to the Joint Venture. No losses of any such location will be applied to the Joint Venture.**

3.  Anixter and the Joint Venture agree that, effective as of August 1, 1987, the Joint Venture will purchase the Cleveland business from Anixter and the Joint Venture will sell the Indianapolis business to Anixter, on terms mutually agreeable to both parties.

4.  This Amendment shall be effective August 1, 1987. All other terms of the Joint Venture Agreement shall remain in full force and effect.

CINCINNATI BELL SUPPLY CO

By __/s/_____

ANIXTER BROS, INC

By __/s/_____

(*See* doc. 75, Ex. A (emphasis added))

### 3. *The Parol Evidence Rule Under Ohio Law*

The Parol Evidence Rule is a rule of substantive law that prohibits a party who has entered into a written contract from contradicting the terms of the contract with evidence of alleged or actual oral agreements. *See* Morris G. Shanker, *Judicial Misuses of the Word Fraud to Defeat the Parol Evidence Rule and the Statute of Frauds,* 23 Akron L.Rev. 1 (1989). In the case at bar, the contract by its own terms is governed and enforced under the laws of Ohio. Therefore, we must determine under Ohio law if the Court should look beyond the four corners of Amendment No. 3 in determining whether parol evidence is admissible in this matter.

■ In Ohio, parol evidence directed to the nature of a contractual relationship is admissible where the contract is ambigu-

---

11. Note: Amendment No. 3 was signed by the then-presidents of CBI and Anixter.

ous and the evidence is consistent with the written agreement that forms the basis of the action between the parties. *See Illinois Controls, Inc. v. Langham,* 70 Ohio St.3d 512, 520, 639 N.E.2d 771, 779 (1994) (citing *Watson v. Lamb,* 75 Ohio St. 481, 491, 79 N.E. 1075, 1076 (1907)); *see also Latina v. Woodpath Dev. Co.,* 57 Ohio St.3d 212, 214, 567 N.E.2d 262, 264 (1991) ("It is incumbent upon the court to interpret such writings."); *Aultman Hospital Assn. v. Community Mut. Ins. Co.,* 46 Ohio St.3d 51, 55, 544 N.E.2d 920, 924 (1989) ("For the foregoing reasons, we hold that where, as here, the parties following negotiations make mutual promises which thereafter are integrated into an unambiguous contract duly executed by them, courts will not give the contract a construction other than that which the plain language of the contract provides.").

After a review of Amendment No. 3 to the JVA, and in particular, Paragraph 2, this Court finds as a matter of law that the terms and provisions of Amendment No. 3 are unambiguous in its context. This Court must look outside of Amendment No. 3 in order to determine the intentions of the parties and the meaning they gave to Paragraph 2.

However, the lack of ambiguity in Amendment No. 3 is only one of two issues before this Court. The other issue concerns the contract principle of "integration".

### 4. *Integration*

■ In *TRINOVA Corp. v. Pilkington Bros.,* the Ohio Supreme Court explained that the principle of "contract integration" is actually a corollary to the parol evidence rule in that:

> Contract integration provides that where the parties' intent is sought to be ascertained from several writings, a prior writing will be rejected in favor of a subsequent one if the latter writing contains the whole of the parties' agreement. If the subsequent agreement is complete and unambiguous on its face,

parol evidence is inadmissible to show a contrary intent of the parties.

70 Ohio St.3d 271, 275, 638 N.E.2d 572, 575 (1994) (quoting 3 Corbin, *Corbin on Contracts* § 573 (1960)). A document that was agreed to by the parties as a "complete and accurate integration of [a] contract" is a prerequisite to application of the parol evidence rule and the subsequent barring of extrinsic evidence. *National City Bank, Akron v. Donaldson,* 95 Ohio App.3d 241, 245, 642 N.E.2d 58, 60 (1994).

In the following sections, this Court concludes that as a matter of law that Amendment No. 3 represented only a "partial integration", and not a "complete integration." Amendment No. 3 does not fully and clearly appear to reflect the intentions and purposes of the parties to this transaction. Instead, the Court finds that we must look to other selected evidence to comprehend the meaning the parties to this action attributed to Paragraph 2 as of August 1, 1987.

### D. *The Court's Analysis*

### 1. *Complete Integration*

■ Integration is a rule of substantive law to be decided by the trial judge in the first instance. 4 Samuel Williston, *A Treatise on the Law of Contracts* § 633 (3d ed.1961). As explained, we find Paragraph No. 2, like the rest of Amendment No. 3, to be unambiguous. Nonetheless, its terms and provisions appear out of place, incomplete and devoid of meaning when viewed in the context of the entire amendment. First, Paragraphs 3 and 4 of Amendment No. 3 clearly and unambiguously pertain to what both parties agree is a memorialization of a change to the Joint Venture's geographical territory from parts of Ohio, Indiana, and Kentucky, to all of Ohio and Kentucky, but none of Indiana. Paragraph 4 gives the effective date of Amendment No. 3 as August 1, 1987, and clearly states that all other terms of the JVA "shall remain in full force and effect." However, though unambiguous, Paragraph No. 2 does not appear to be consistent, nor

does it relate directly to the other paragraphs of Amendment No. 3 that memorialize the Joint Venture's "territory swap". Unlike the other provisions, Paragraph 2 appears to be related to either another transaction or agreement that is either to run concurrently with the "territory swap" as referred to in Paragraphs 1 and 3 or to be considered as a method of payment or distribution of assets of another contemporaneous transaction or agreement.

Thus, this Court finds that Amendment No. 3 cannot be interpreted as a complete integration that fully sets forth the intentions and purposes of the parties to the JVA. *See Aultman Hosp. Assn.*, 46 Ohio St.3d at 53, 544 N.E.2d at 923 (finding that the doctrine of integration is meant to supply missing meaning in order to effectuate the full intent of the parties). Instead, we find that Paragraph No. 2 represents on its face a partial integration of a concurrent and related transaction or agreement to Amendment No. 3. *See TRI-NOVA Corp.*, 70 Ohio St.3d at 276, 638 N.E.2d at 576 (finding that in the case of a partial integration, only consistent additional terms may be added, not inconsistent terms).

### 2. *Partial Integration*

We found only one Ohio case that addresses the parol evidence rule and the principle of partial integration in the context of an agreement containing a integration clause. In *Camargo Cadillac Co. v. Garfield Enters.*, 3 Ohio App.3d 435, 445 N.E.2d 1141 (1982), the court of appeals reversed the trial court's decision granting summary judgment.[12] The court held that when a court is faced with the issue of an agreement that would contradict, explain, or supplement a writing, one of the first determinations to be made by the trial court is whether the writing is "a complete and exclusive statement of the terms of the agreement" between the parties. *Camargo*, at 437, 445 N.E.2d at 1144. Under

*Camargo*, the court reasoned that the intent of the parties cannot always be based on the four corners of the document standing alone, but, rather, the trial court must review whatever evidence is put forward by the parties as to their intentions. *Id.* at 438–39, 445 N.E.2d at 1145–46.

The court in *Camargo* concludes by holding that the parol evidence rule does not exclude consideration of evidence about communications expressing the intentions of the parties; instead it allows initial consideration of all such evidence, and the facts and circumstances surrounding the agreement. *Id.; see also Inland Refuse Transfer Co. v. Browning–Ferris Indus. of Ohio, Inc.*, 15 Ohio St.3d 321, 322, 474 N.E.2d 271, 273 (1984) ("[I]f a term cannot be determined from the four corners of the contract, factual determination of intent or reasonableness may be necessary to supply the missing term.").

Accordingly, this Court finds as a matter of law that, although Paragraph 2 of Amendment No. 3 is unambiguous, it reflects only a partial integration of the intentions and purposes of the parties to the Joint Venture. *See BVR Liquidating*, 190 F.3d 768, 773 ("Although the language of [the contract] is unambiguous, *Yard–Man* requires us to read each provision in light of the agreement as a whole"). For instance, Paragraph 2 partially pertains to the "territory swap," the ordering, payment, and allocation of CATV sales in the new Area of Responsibility. Thus, Paragraph 2 appears out of place and is inconsistent with the other terms and provisions of Amendment No. 3. If this Court chose to ignore the evidence of what those terms, payments and allocation of the CATV sales pertained to, then we could not ascertain the full implications and meaning the parties attributed to Amendment No. 3 when it was first signed. Therefore, in the interest of fairness, this Court must consider

---

12. In *Camargo*, the court's analysis and holding was decided under Ohio's version of the Uniform Commercial Code. *See* Ohio Rev. Code § 1302.05. Furthermore, *In re Jasin*, 80

B.R. 418, 420 (Bankr.N.D.Ohio 1987), provides an excellent summary of the *Camargo Cadillac* decision.

all of the relevant evidence submitted by both Plaintiff and Defendant regarding the alleged sale or conversion of the CATV asset from the Joint Venture.

The Court agrees with the parties that there are no genuine issues of factual dispute remaining and that this matter can be decided on their motions for summary judgment. Therefore, for the foregoing reasons, this Court finds that Plaintiff's Motion for Partial Summary Judgment (doc. 75) is unpersuasive. Accordingly, Plaintiff's Motion is hereby DENIED.

### III. Defendants' Renewed Motion for Summary Judgment (doc. 77).

#### A. Introduction

In Defendants' Renewed Motion for Summary Judgment (doc. 77), Defendants allege that Plaintiff fails to raise any genuine issues of material fact that would allow a fact-finder to conclude that they are liable to Plaintiff for any of the claims alleged in its Complaint (doc. 2). Therefore, Defendants argue, their Renewed Motion should be granted pursuant to Rule 56 of the Federal Rules of Civil Procedure (*Id.*).

In its Complaint, Plaintiff asserts a total of six (6) claims against Defendants. First, pursuant to Ohio Rev.Code § 1775.21, Plaintiff demands an accounting. Secondly, Plaintiff alleges that it is entitled to its partnership share of the value of the Joint Venture as a going concern, including goodwill. Third, Plaintiff requests an accounting from Defendants for the CATV business both before and after its transfer to ANTEC, as well as compensatory and punitive damages arising from the alleged conversion. Fourth, Plaintiff argues that it is entitled to disgorgement of profits and restitution for unjust enrichment from Defendants for its conversion of the CATV business. Fifth, Plaintiff contends that it is entitled to the appraisal process to establish the value of the Joint Venture's goodwill, for which it alleges it is entitled to be compensated. Sixth, Plaintiff claims that Defendants breached its fiduciary duties to the Joint Venture as a partner and as a manager (*see* doc. 2).

In an effort to defend against Defendants' Renewed Motion, Plaintiff invokes the parol evidence rule and the doctrine of integration (doc. 79). However, as this Court already held in Section II of this Order, Paragraph 2, though found to be unambiguous, is only a partial integration of Amendment No. 3. Accordingly, this Court may review selected evidence submitted by the parties in an effort to ascertain the meaning, intentions and purposes of the parties at the time Amendment No. 3 was memorialized.

The Court notes that Defendants' Reply (doc. 83) contains many of the facts and arguments that this Court already addressed in Section II of this Order. Specifically, Defendants contend that Plaintiff agreed to the CATV sale so there cannot be a conversion (*Id.*). Moreover, Defendants argue that, even if this Court was to find a conversion occurred in this matter, Plaintiff would, nonetheless, be estopped from complaining about it due to its acceptance, by way of the Joint Venture, of the more than $194,000 in payments that the Joint Venture already received and accepted from Defendants in exchange for the CATV transfer (*Id.*).

#### B. Claims III and IV: Conversion

■ Under Ohio law, the tort of conversion is defined as the "wrongful exercise of dominion over property in exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Crosby v. Beam*, 83 Ohio App.3d 501, 510, 615 N.E.2d 294, 300 (1992); *see also NPF IV, Inc.*, 922 F.Supp. at 81 (finding that the elements of conversion include plaintiff's rightful ownership, defendant's wrongful act of disposition, and damages); *Taylor v. First Nat. Bank of Cincinnati*, 31 Ohio App.3d 49, 52, 508 N.E.2d 1006, 1011 (1986); *Fulks v. Fulks*, 95 Ohio App. 515, 518, 121 N.E.2d 180, 182 (1953).

■ Defendants allege that no conversion occurred because Plaintiff agreed to Defendants' purchase of the CATV assets from the Joint Venture. In addition, Defendants assert that they paid Plaintiff all of the amounts called for in Paragraph 2 of Amendment No. 3 in order to compensate the Joint Venture for the CATV transfer to Defendants. Defendants further argue that there can be no claim for conversion since Plaintiff cannot establish that it incurred actual damages.

In contrast, Plaintiffs contend that "Amendment No. 3 cannot plausibly be read as having anything to do with a sale of the Joint Venture's CATV business" to Defendants (doc. 79). Plaintiffs also contend that Defendants have not "submitted and cannot submit, admissible evidence showing consent on the part of [Plaintiff], and thus [Defendants have] resorted to inadmissible parol evidence in a vain attempt to recast the clear and unambiguous language of Amendment No. 3" (*Id.*).

Upon reviewing this matter, we conclude no factual disputes exist in this case to preclude this Court from granting Defendants' Renewed Motion for Summary Judgment (doc. 77). Furthermore, for the following reasons, this Court finds Defendants' arguments persuasive and well-taken.

Amendment No. 3, which was to be effective as of August 1, 1987, was executed by CBI on August 13, 1987 and by Anixter on August 21, 1987 (*see* doc. 77, Ex. I). Shortly thereafter, Albert Smith, Vice–President and Controller of Anixter, sent Nick Rothenbach, President of CBI, a letter with an attachment, dated September 21, 1987 (hereinafter, "September 21, 1987 letter") (*Id.*, Ex. K). The letter indicated that a carbon copy was to be sent to Don Hoffman of CBI and Bob Wilson of Anixter (*Id.*). The attachment to the September 21, 1987 letter is entitled "Cincinnati Joint Venture Net Asset Transfer, July 31, 1987" and contains a column with the heading "CATV" and "Net Assets" of $194,956.65 (*Id.*). The September 21,1987 letter also invites Mr. Rothenbach to "have your people review the numbers and call me if you have any questions" (*Id.*). The Court finds that this letter and its attachment are significant for several reasons.

First, Plaintiff offers no reasonable explanation as to the asset transfer of $194,956.65 from Anixter to the Joint Venture other than that put forth by Defendants. Furthermore, although a number of Plaintiff's witnesses state that they would have requested clarification if they would have received information from Anixter containing a discrepancy,[13] there is no evidence that CBI requested clarification of or made inquiries about the transfer. Nor did CBI return the net asset transfer of $194,956.65.

Second, the September 21, 1987 letter and its attachment together with Paragraph 2 shows that Defendants paid the Joint Venture, pursuant to the formula set forth in Paragraph 2, all of the profits derived from Defendants' sales to customers ordering CATV products from within the new Area of Responsibility. Defendant's arguments, evidence, and depositions submitted to the Court are consistent with and offer further explanations of the terms of Paragraph 2. Plaintiff fails to provide evidence tending to contradict this understanding of Defendants' evidence.

Third, Plaintiff fails to submit any evidence indicating that its share of the asset transfer from Defendants to the Joint Venture was ever returned to Defendants during the term of the Joint Venture. It is apparent that Plaintiff accepted the payments, pursuant to the formula set forth in Paragraph 2, for several years before any protest was made. By accepting both Defendants' payment for the CATV assets in 1987 and the stream of CATV-related profits for several years thereafter, Plaintiff is now estopped from denying the existence

---

**13.** *See* doc. 77, Exs. B, Clark Dep. At 52–55; Ex. C, Sullivan Dep. At 51–55; Ex. D, Hoffman Dep. at 31–32.

of these payments. *See Murfey, Blossom & Co. v. State,* 20 Ohio Law Abs. 176, 31 N.E.2d 134, 142 (1935) (finding that if a party is guilty of some negligence or lack of diligence, the party must accept the consequences of its own acts that lead others to injury); *see also Fleming v. Steubenville,* 44 Ohio App. 121, 125, 184 N.E. 701, 702 (1931).

Accordingly, we find that there is no genuine issue of material fact warranting denial of Defendant's Renewed Motion for Summary Judgment.

This Court finds as a matter of law that Plaintiff failed to show that a conversion of the CATV asset from the Joint Venture occurred. Furthermore, we find that Plaintiff cannot contradict Defendants' evidence that the incident in question actually amounted to a purchase and asset transfer of the CATV business from the Joint Venture to Defendants. Furthermore, the Court holds that Plaintiff is estopped from denying the existence of the transfer of $194,956.65 as payment for the CATV in the new Area of Primary Responsibility.

Thus, we hereby GRANT Defendant's Renewed Motion for Summary Judgment (doc. 77) as to Counts III and IV.

**B.  *Claim II.***

The Court finds that it need not address this aspect of Defendants' Renewed Motion in light of the Court's Order of February 11, 1997 (doc. 49) dismissing Claim II from the Complaint (doc. 2).

**C.  *Claims I, V, and VI***

In its Response to Defendants' Renewed Motion for Summary Judgment, Plaintiff states that it is "seeking an accounting in connection with its CATV claim, inasmuch as all of the admissible evidence demonstrates unequivocally [Defendants'] defalcation of the Joint Venture's CATV business during the life of the Joint Venture" (doc. 79). Plaintiff further states that the Uniform Partnership Act entitles it to an accounting for any profits derived from the ANTEC IPO transaction (*Id.*). *See* Ohio Rev.Code §§ 1775.20–21; *see also Dunn v. Zimmerman,* 69 Ohio St.3d 304, 307, 631 N.E.2d 1040, 1042 (1994) (concluding that the "General Assembly intended that a breach of fiduciary duty among partners is actionable at law" and that the normal remedy is an accounting).

In addition, Plaintiff contends that it is entitled to an appraisal process to establish the value of the Joint Venture's goodwill, for which it alleges it is entitled to be compensated (doc. 2).

Plaintiff's final claim against Defendants asserts that "Anixter still has not fulfilled its fiduciary responsibilities regarding the removal of the Joint Venture's CATV business and profits from the ANTEC IPO" (doc. 79). Thus, Plaintiff argues that it would be unwarranted for the Court to absolve Defendants of all possible fiduciary violations at this time (*Id.*). *See Stone v. Davis,* 66 Ohio St.2d 74, 78, 419 N.E.2d 1094, 1097–98 (1981) (finding that a fiduciary duty may arise either out of contract or from an informal relationship where both parties understand that the relationship imposed a special trust or confidence between them).

Having already held that Defendants did not convert the CATV business from the Joint Venture and that Plaintiff is estopped from denying the payment for and acceptance of the CATV asset from Defendants, the Court hereby finds that Claims I, V and VI are MOOT.

**D.  *Summary***

Ordinarily, the parol evidence rule is used to preclude the use of oral testimony to vary the terms of a written agreement complete on its face. We find the terms and provisions of Amendment No. 3 are not ambiguous, however, we also find that Amendment No. 3 is not a completely integrated document. As a partially integrated document, Amendment No. 3 must be read in light of and integrated with the other selected documents that were presented by the Parties. After reviewing all of the briefs, exhibits, agreements, evidence, and oral arguments that were pre-

sented by the Parties, the Court concludes that the parol evidence rule is inapplicable. The Court also concludes that after a review of Amendment No. 3 and the other selected evidence presented by the Parties, that there was a sale of the CATV asset from the Joint Venture to Anixter.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendants' Motion for Leave to File a Supplemental Response to Plaintiff's Motion for Partial Summary Judgment *Instanter* (doc. 85). Furthermore, the Court hereby DENIES Plaintiff's Motion for Partial Summary Judgment (doc. 75) and GRANTS IN PART, as to Claims III and IV, Defendants' Renewed Motion for Summary Judgment (doc. 77). The Court also hereby finds that Claims I, V, and VI are MOOT (doc. 77). Finally, the Court notes that we already addressed Claim II in a previous Court Order dated February 11, 1997 (doc. 49). Accordingly, Plaintiff's Complaint is hereby DISMISSED.

SO ORDERED.