### STARR CO. v COLUMBIA BROADCASTING SYSTEM, INC.

Ohio Appeals, 1st Dist, Hamilton Co

No 5917. Decided April 7, 1941

Cedric Vogel, Cincinnati, for appellee.
Charles P. Taft, Cincinnati, for appellant.

### OPINION

By ROSS, J.

This is an appeal on questions of law from the judgment of the Court of Common Pleas of Hamilton County, Ohio.

The plaintiff instituted an action against the defendant, whereby it sought to recover the amount of certain deferred payments provided for in a conditional sales contract covering the purchase of a piano by the defendant's predecessor.

The parties to the action are by assignment and otherwise successors in title and liability to the parties to this

contract and other contracts involved in this action.

The conditional sales contract upon which this action is predicated contains a statement that a credit "in trade" was allowed on the total purchase price of the piano of "Two Hundred and eighty-five Dollars ($285.00)" and such contract further provided that "the balance One Thousand Eight Hundred and fifteen dollars with interest at the rate of 6 per cent per annum from the date thereof, in the following installments:

17 mo at 100.00 and
one mo at 115.00"

It will be noticed that there is no statement relating to the deferred payments indicating of what they are to consist, whether dollars or trade.

The plaintiff contends the "100.00" and the "115.00" means dollars. The defendant claims these terms refer to the equivalent of dollars in broadcasting time.

This is the issue in the case.

It appears from the record that some time previous to the execution of the piano sales contract that the parties interested entered into a contract providing for the purchase of broadcasting time by the Piano Company. By the positive terms of such contract, it was agreed that the broadcasting company would receive payment for such time one-half in money and one-half in trade to be purchased from the Piano Company.

The evidence further shows that prior to the delivery of the piano, other merchandise was received by the broadcasting company as part payment for time consumed by the Piano Company and that such time in accordance with the terms of the contract was thus paid for one-half in cash and one-half in trade.

The records of the Piano Company show that after the execution of the sales contract, and after time had been consumed by the Piano Company over the station of the broadcasting company, credit on the books of the Piano Company was given for several months, for amounts corresponding with the amounts and months relating to deferred payments as specified in the piano sales contract.

In other words, for several months the Piano Company credited the broadcasting company with payments of $100.00, which was in fact one-half of the value of time consumed in the station of the broadcasting company. About the time when such credits ceased on the books of the Piano Company, such company notified the broadcasting company that it desired to delay the use of time until some later date and there seems to have been an acquiescence in such deferment.

Apparently, since that time nothing further was done until shortly before this action was instituted.

Both parties seemingly dropped the matter until it was conceived by the plaintiff that it could ignore the general understanding between the parties, as evidenced by the master contract, and enforce the provisions of the piano conditional sales contract to the exclusion of everything else affecting the situation.

An examination of the record conclusively shows that the unequivocal understanding of both parties to the original transaction, as evidenced by the master contract and the subsequent conduct of the parties, was that the Piano Company was to pay for broadcasting time half in cash and half in trade or merchandise to be furnished by the Piano Company. There is nothing in the record to show any different understanding covering the period involved in this action.

The plaintiff claims, however, that the terms of the conditional sales contract are unambiguous and definite and that it constitutes an isolated transaction not covered by the master contract.

As we have stated, the evidence extrinsic to such conditional sales contract is definitely conclusive that the conditional sales contract, as other

previous similar transactions, was included within the purview of the original and renewal master contracts.

Although the plaintiff substantially admits the force of the extrinsic evidence, it relies solely upon the so-called parol evidence rule for protection against any modification of a flat claim for the amount of the deferred payments in cash and still retains its right to deferment of its use of the broadcasting station. The defendant is ready, willing, and able to furnish broadcasting time and has so stated.

It would have been much simpler had the defendant requested a reformation of the conditional sales contract. The evidence in this case would have shown an absolute right to such reformation. In the absence of such request, may the court still enforce the obvious intention of the parties, or is it by a harsh rule of law precluded from consideration of evidence extrinsic to the contract presented, as the sole subject of this litigation? This, certainly, in view of the circumstances here considered cannot be required. Such a situation presenting reliance for relief upon an arbitrary rule of law as opposed to a defense based upon manifest justice is not calculated to invoke the support of even a court of law.

Technicality, under such circumstances must be met with technicality; rule of law with rule of law.

The general rule applicable to parol evidence is stated in **Blosser v Enderlin, 113 Oh St 121**, wherein it is stated in the first and second paragraphs of the syllabus:

"1. The agreement of parties to a written contract is to be ascertained from the language of the instrument, and there can be no intendment or implication inconsistent with the express terms thereof.

"2. Except where the reformation of a written contract is sought in equity, evidence can not be introduced to show an agreement between the parties materially different from that expressed by clear and unambiguous language of the instrument."

The plaintiff advances this principle of law as a complete solution to the problem presented. It ignores equally important rules applicable to the construction of contracts.

An instrument may not be entirely divorced from its environment. This is illustrated in the case of **Kilbeath v Gaylord, Admr., etc., 34 Oh St 305**, the syllabus of which is as follows:

"The subscribers to the stock of an insurance company organized under a special charter granted prior to the adoption of the present constitution, gave to the corporation their secured promissory note, payable on demand, for the amount of the stock by them respectively subscribed. Held, that the notes must be construed in connection with the nature of the business of the corporation, and in view of the object intended by the parties in giving their notes. Thus construed, the notes were intended to be payable on the call of the directors; and the statute of limitations is no more available as a defense against the collection of the notes, than it would have been against the collection of the subscription."

By analogy, if every contract must be construed in the light of every statute affecting the rights of the parties **(Thomas v Kalbfus, Receiver, 97 Oh St 232)** it seems clear that a contract should be construed in the light of a previous contract which is evidently designed to control the relations of the parties for a period covered by the latter contract, unless the latter contract is manifestly an abrogation of the former.

There is nothing in the sales contract which suggests an abrogation of the master contract. On the contrary, it appears to refer to some other transaction in that a credit in trade is given upon the sales price of the piano.

The real intention of the parties involved in this case cannot be determined by ignoring the master contract. That contract and the sales contract must be considered together. When so considered, the obvious intention of the

parties, the substantially admitted intention of the parties, is carried out. When the master contract is ignored, any one considering the entire matter must be convinced that the plaintiff is permitted to recover only by ignoring every other consideration pointing to a complete defense of this action by the defendant.

As stated in an early Ohio case, **Hildebrand v Fogle, 20 Ohio 147.** The first paragraph of the syllabus explains the application of this rule:

"Where a subcontract in writing, for carrying the United States mail, provides for payments to be made quarterly, in the months of May, August, November and February, it is competent to show, by parol evidence, from the circumstances and situation of the contracting parties, that the contract had relation to the quarterly divisions of the years fixed in the post-office department, and when such quarters commence and terminate."

The general rule is stated in 17 Corpus Juris. §714:

"Where several instruments executed contemporaneously or at different times pertain to the same transaction they will be read together although they do not expressly refer to each other."

For example, bonds, notes, deeds, or even contracts might well be the subject of an escrow agreement. It would not be seriously contended that merely because these instruments were independent isolated contracts, not referring to any other contract, or each other, that their effect would not be controlled by a contract previously entered into covering the disposition of the subject-matter involved in the escrowed instruments.

An examination of the sales contract develops that it is not entirely perfect. While in an ordinary case, a court would experience no difficulty in supplying the descriptive word or sign of dollars, to that the figures "100.00" and "115.00" where the plaintiff relies upon the general parol evidence rules 'and insists upon a most rigid and harsh construction of the sales contract as an isolated instrument, it should not complain if the defendant demands that the figures be shown by extrinsic evidence to refer to a previous master contract and not to a payment in cash alone.

It is our conclusion that the evidence introduced was competent to show the real purpose and intention of the parties and that such intention is developed without violation of the parol evidence rule, construed and modified as hereinbefore noted.

Considering both contracts together, it is obvious that payment for the piano was to be in broadcasting time, a credit of $100 per month be given on the entire charge of $200 per month for the time.

For the reasons given, it is our conclusion that the judgment of the court of common pleas must be reversed and judgment here entered for the defendant.

MATTHEWS, PJ., concurs in conclusion. HAMILTON, J., dissents.