CAMARGO CADILLAC CO., APPELLEE, *v.* GARFIELD ENTERPRISES, INC., APPELLANT.

COLUMBIA OLDSMOBILE CO., APPELLEE, *v.* FRANK MESSER & SONS CONSTRUCTION CO., APPELLANT.

COLUMBIA OLDSMOBILE CO., APPELLEE, *v.* GARFIELD ENTERPRISES, INC., APPELLANT.

CAMARGO CADILLAC CO., APPELLEE, *v.* FRANK MESSER & SONS CONSTRUCTION CO., APPELLANT.

(Nos. C-810243, C-810244, C-810245 and C-810248—Decided March 17, 1982.)

*Mechley, Robbins & Kelly Co., L.P.A.,* and *Mr. James M. Kelly,* for appellees. *Messrs. Taft, Stettinius & Hollister*

and *Mr. Richard S. Roberts,* for appellants.

BLACK, J. The principal question raised in these consolidated appeals is whether the parol evidence rule set forth in R.C. 1302.05[1] excludes from any consideration whatsoever an oral agreement about the mode of payment of a series of written contracts for the sale of automobiles. The trial court excluded all evidence of a claimed contemporaneous oral agreement about payment and entered summary judgment for the seller. We reverse.

Camargo Cadillac Company (Camargo) and Columbia Oldsmobile Company (Columbia) each sued both Garfield Enterprises, Inc. (Garfield) and Frank Messer & Sons Construction Co. (Messer) to recover sums due on open account from Garfield and Messer (sometimes, collectively, defendants) for the purchase of automobiles. Defendants admitted in all four actions that they owed some money on account but not the sums claimed by Camargo and Columbia (sometimes, collectively, plaintiffs), asserting as an affirmative defense that extrinsic to the several written contracts, an oral agreement had been made between Ronald G. Joseph on behalf of plaintiffs and Louis J. Messer on behalf of defendants that the amounts due from defendants would be credited against an outstanding debt owed to defendants by a third entity owned and controlled by Ronald G. Joseph, known as Grandin House, Ltd.

Upon motions made by plaintiffs, summary judgments were granted in favor of plaintiffs against defendants for the amounts demanded in the four complaints. The trial court held that Ohio law barred consideration of evidence of the oral agreement about payment, inasmuch as such extrinsic evidence would "contradict" a contractual provision that the seller (Camargo or Columbia) and the purchaser (Garfield or Messer) were understood to be "the sole parties" to the contracts.

The information contained in the pleadings and the affidavits submitted by plaintiffs and defendants discloses that a total of fifteen automobiles were purchased by defendants under fifteen written contracts during the second half of November 1979. The aggregate sum of the purchase prices was $104,853.98. Standard printed contracts were used in each instance, each describing among other things the parties and the vehicle purchased and showing the amount due to seller, but without any provision about how the balance due would be paid. On the reverse side of the contracts are twelve paragraphs in small print concerning additional terms and conditions, limited warranties by the seller and limited warranties on new automobiles by the manufacturer. The first paragraph designates Camargo or Columbia as "Dealer," the buyer as "Purchaser," and General Motors Corporation as "Manufacturer." It goes on to deny the existence of any agency between Dealer and Manufacturer and to state that the reference to Manufacturer is for the

---

[1] R.C. 1302.05 reads in full as follows:

"Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented:

"(A) by course of dealing or usage of trade as provided in section 1301.11 of the Revised Code or by a course of performance as provided in section 1302.11 of the Revised Code; and

"(B) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement."

limited purpose of explaining contractual relationships between Dealer and Manufacturer with respect to new automobiles.[2] This first paragraph also contains the "understanding" that Dealer and Purchaser were "the sole parties" to the document.

Upon insistence by Louis G. Messer, plaintiffs delivered certificates of title to the cars without having first received payment therefor. Defendants claim that the oral contemporaneous agreement between Louis G. Messer, acting for defendants, and Ronald G. Joseph, acting for plaintiffs and for Grandin House, Ltd., was that the aggregate sum due for the fifteen automobiles would be paid not in cash but by giving credit against a debt of $100,000 then owing to defendants from Grandin House, Ltd. A similar method of payment had been used for the purchase of a station wagon earlier in 1979. Defendants claim that the certificates of title were delivered promptly without cash payment after Louis G. Messer made personal calls to plaintiffs' places of business referring to Ronald G. Joseph's agreement. On the other hand, plaintiffs assert that the only reason the certificates of title were delivered after those phone calls and without full payment was to

allow the defendants to obtain consecutively numbered license plates.

We hold that the trial court erred in granting summary judgment for plaintiffs under the foregoing circumstances. In brief, the parol evidence rule applicable to sales under the Uniform Commercial Code does not exclude consideration of extrinsic evidence about communications that express the intentions of the parties. On the contrary, R.C. 1302.05 allows initial consideration of all such evidence, as is explained below.

Whatever may have been Ohio's treatment of the parol evidence rule in the past,[3] the rule applicable to sales under the Uniform Commercial Code is now embodied in R.C. 1302.05 (U.C.C. 2-202), effective since 1962. Our interpretation of it springs from the language used by the legislature and from construction of this language by other courts. The language makes it clear that when a court must address the issue of contradicting, explaining or supplementing a writing, one of the first determinations to be made under R.C. 1302.05 is whether the writing is "a complete and exclusive statement of the terms of the agreement" between the parties.[4] This determination is made by the court outside the hearing of the trier of

[2] Paragraph 1 on the reverse side of the documents reads uniformly as follows (the specific references to "Camargo" and "Cadillac" being changed to "Columbia" and "Oldsmobile" in the appropriate documents):

"As used in this order the terms 'Dealer' shall mean the Camargo Cadillac Company, the term 'Purchaser' shall mean the Party executing this Order, and the term 'Manufacturer' shall mean Cadillac Motor Division, General Motors Corporation, it being understood by Purchaser and Dealer that Dealer is in no respect the Agent of Manufacturer, that Dealer and Purchaser are the sole parties to this Order, and that reference to Manufacturer herein is solely for the purposes of explaining generally certain contractual relationships existing between Dealer and

Manufacturer with respect to new Cadillac Motor Vehicles."

[3] In Ohio, the parol evidence rule has been held to make inadmissible any parol evidence to vary the terms of a written contract, *Serviss v. Stockstill* (1876), 30 Ohio St. 418, or to add a party to a negotiable instrument who did not appear on its face, *Ohio National Bank v. Cook* (1882), 38 Ohio St. 442, or to vary a lease that is clear and unambiguous, *Blosser v. Enderlin* (1925), 113 Ohio St. 121. See, also, 21 Ohio Jurisprudence 2d 659 *et seq.,* Evidence, Sections 637 *et seq.*

[4] *ARB (American Research Bureau), Inc. v. E-Systems, Inc.* (C.A. D.C. 1980), 663 F.2d 189, 30 UCC Rep. 949; *Sunbury Textile Mills v. Commissioner* (C.A. 3, 1978), 585 F.2d 1190;

fact, not by examining the document itself viewed only from its four corners,[5] but on the basis of whatever evidence is presented by the parties about their intentions. For instance, in considering whether consistent terms will be added to a writing, evidence thereof will be kept from the trier of fact if the court finds that if these additional terms had in fact been agreed upon, they certainly would have been included in the writing. Comment 3 to R.C. 1302.05. Generally such a finding can be made only after considering all the surrounding circumstances. Also, for the purpose of explaining or supplementing the language of the document, it is not necessary for the court to find that the language is ambiguous before evidence may be admitted about a course of dealing, a usage of trade or a course of performance. Comment 1(c) to R.C. 1302.05.

If the court finds from all the evidence before it, on the basis of the credibility and weight of that evidence, that the writing was intended to be "a complete and exclusive statement of the terms of the agreement" (totally integrated), then the writing cannot be contradicted or added to, and it cannot be explained or supplemented except by a course of dealing, usage of trade or a course of performance. On the other hand, the writing may be only a partial integration. If the court finds from the evidence that the writing was intended by the parties to be a final expression of agreement with respect to some but not all the terms of their agreement, then the terms included in the writing cannot be contradicted but can be

---

*General Matters, Inc.* v. *Penny Products, Inc.* (C.A. 5, 1981), 651 F.2d 1017, 31 UCC Rep. 1556; *S. M. Wilson & Co.* v. *Smith International, Inc.* (C.A. 9, 1978), 587 F.2d 1363; *Lakeside Bridge & Steel Co.* v. *Mountain State Constr. Co.* (E.D. Wis. 1975), 400 F. Supp. 273; *In re Pacific Sunwest Printing* (Bankr. Ct., S.D. Cal. 1980), 6 Bankr. Rep. 408, 30 UCC Rep. 39; *O'Neil* v. *International Harvester Co.* (1978), 40 Colo. App. 369, 575 P.2d 862, 23 UCC Rep. 1152; *Anderson & Nafziger* v. *G. T. Newcomb, Inc.* (1979), 100 Idaho 175, 595 P.2d 709; *Peter Pan Seafoods, Inc.* v. *Olympic Foundry Co.* (1977), 17 Wash. App. 761, 565 P.2d 819.

See, also, 2 Restatement of Contracts 2d 115 *et seq.*, Sections 209-213 (1981); 3 Corbin on Contracts 359, Section 573 (1960); 9 Wigmore on Evidence 3 *et seq.*, Sections 2400 *et seq.* (Chadbourn Rev. 1981); 4 Williston on Contracts 948, Sections 631 *et seq.* (3 Ed. 1961).

[5] *S. M. Wilson & Co.* v. *Smith International, Inc., supra,* 587 F.2d at 1370 (the section "represents a shift in California law from assuming that a writing was intended as a complete integration to assuming that it was not 'unless the court expressly so finds' that the parties so intended"); *In re Pacific Sunwest Printing, supra,* 6 Bankr. Rep. at 413, 30 UCC Rep. at 46 ("the Commercial Code assumes that a written contract does *not* express the full agreement of the parties."); *Anderson & Nafziger* v. *G. T. Newcomb, Inc., supra,* 100 Idaho at 180, 595 P.2d at 714 (the section "was intended * * * to abolish the presumption that a writing is a total integration"); *Atlantic Northern Airlines* v. *Schwimmer* (1953), 12 N.J. 293, 302-303, 96 A.2d 652, 656.

The parol evidence rule does not assume "that a writing can possess independently of the surrounding circumstances, any inherent status or efficacy." 9 Wigmore on Evidence 7, Section 2400 (Chadbourn Rev. 1981). "There is no magic in the writing itself. It hangs in midair, incapable of self-support, until some foundation of other facts has been built for it." *Id.,* at 6.

As we said in *Starr Co.* v. *Columbia Broadcasting System* (1941), 68 Ohio App. 352, 356 [21 O.O. 335], "An instrument may not be entirely divorced from its environment."

Wigmore states, with logic, that to use as a test of admissibility the question whether the parol evidence contradicts or varies the terms of the writing is to reason in a circle, because this reasoning attempts "to decide whether something conceded to be different from the writing ought to be excluded, by showing it *is* different." 9 Wigmore on Evidence 101, Section 2431 (Chadbourn Rev. 1981).

explained or supplemented (A) by a course of dealing, a usage of trade, or a course of performance, or (B) by evidence of consistent additional terms.[6] Some jurisdictions allow the conclusion that the document is only a partial integration even though it contains a merger or integration clause.[7]

We find in the record a genuine issue of material fact not susceptible of determination on a motion for summary judgment. The threshold issue under R.C. 1302.05 is whether the parties intended that each of the fifteen written contracts was, by the designation of defendants as "Purchaser" and by the wording of paragraph 1 on the reverse side thereof (set forth in note 2), to be "a complete and exclusive statement of the terms of the agreement" between them, separate and independent of the fourteen other contracts, or did they intend that the unqualified obligation of the contracts should be qualified and conditioned by a contemporaneous oral agreement that the amounts due thereunder were to be credited against an amount owed to defendants (Purchasers) by an affiliate of the plaintiffs (Dealers)? The factual dispute is illustrated by plaintiffs' claim that the cars were sold on open account and that the certificates of title were delivered to defendants as an accommodation to allow them to purchase consecutively numbered license plates, as opposed to defendants' claim that the cars had been substantially paid for by crediting the amounts due against the outstanding debt from one of Ronald G. Joseph's entities to one of Louis J. Messer's entities, and that the certificates of title were released by reason of this substantial payment.

If from the evidence about the intent of the parties, this threshold question is determined as defendants contend, there is no need to be concerned with the balance of R.C. 1302.05. If the oral agreement is found to express the mutual bargain between the parties, it may be "contradictory" or "inconsistent" with the written contracts and still be binding and enforceable between the parties. On the other hand, if the written contracts were intended as the "complete and exclusive expression" of the whole agreement and there was no other agreement between the parties, then plaintiffs prevail against defendants for the amounts due under the contracts. But if the contracts were intended as the final expression of agreement with respect to some but not all the terms of their overall agreement, then those terms, particularly the terms about payment, cannot be contradicted by the oral agreement but can be explained or supplemented by the oral agreement so long as it is consistent.[8]

The trial court erred in granting summary judgment. The first assignment of error has merit.

In the second assignment, defendants claim the court erred in granting summary judgment against Messer when the record disclosed that the purchaser of some of the fifteen automobiles was not defendant "Frank Messer & Sons Con-

---

[6] 2 Restatement of Contracts 2d 137, Section 216 (1981); 9 Wigmore on Evidence 97, Section 2430 (Chadbourn Rev. 1981); 3 Corbin on Contracts 359, Section 573 (1960); 4 Williston on Contracts 1033, Section 636 (3 Ed. 1961).

[7] *ARB, Inc.* v. *E-Systems, Inc., supra; In re Pacific Sunwest Printing, supra; O'Neil* v. *International Harvester Co., supra.*

[8] While we neither reach nor decide the question whether the oral agreement contradicts or is consistent with the written contracts, we note that similar issues are treated in the following: *B. F. Goodrich Co.* v. *Brooks* (Fla. App. 1959), 113 So.2d 593; *Starr Co.* v. *Columbia Broadcasting System, supra; Ayres* v. *Cook* (1941), 37 Ohio Law Abs. 224; *Perkins Oil Co.* v. *Davis* (1934), 228 Ala. 190, 153 So. 417; *Stack* v. *Stack* (1932), 202 N.C. 461, 163 S.E. 589; 2 Restatement of Contracts 2d 139, Section 216, Comment *d,* Illustration 4.

*struction Co."* but "Frank Messer & Sons, *Inc."* (emphasis added), a different legal entity. (Frank Messer & Sons, Inc. is the sole shareholder of Frank Messer & Sons Construction Co. and of Garfield Enterprises, Inc.) Although plaintiffs' affidavits swear that all sales were made to Frank Messer & Sons Construction Co., five of the attached purchase contracts undeniably demonstrate that the sales were in fact made to Frank Messer & Sons, Inc.[9] Defendant Messer called this discrepancy to the trial court's attention in general terms in the affidavit of Louis J. Messer. We do not believe defendants waived the point by failing to be specific in this case, particularly since plaintiffs insist that we limit our interpretation of the contracts strictly to their four corners. The second assignment of error has merit.

We reverse the judgment below and remand this case for further proceedings.

*Judgment reversed*
*and case remanded.*

PALMER, P.J., and KEEFE, J., concur.

---

[9] Three contracts clearly show Frank Messer & Sons, Inc. as purchaser: Exhibits B and C to Affidavit of Robert L. Zelina, Jr., in case No. A-8004295 (also C-810248), and Exhibit B to Affidavit of Howard Anneken in case No. A-8004297 (also, C-810244). Exhibits C and J to the Anneken Affidavit show purchaser as "Frank Messer & Sons," which is equivocal but deemed for the purposes of the motion for summary judgment (construing the evidence most strongly in favor of defendants) to mean Frank Messer & Sons, Inc.