16 *Watkins & Son Pet

. . . [D]iminished competition for territories or customers among defendant's dealers benefits, rather than harms, sellers of rival brands. Reduced rivalry among dealers in the defendant's brand allows rival sellers to maintain volume and profit without lowering prices or to expand their sales by undercutting the defendant's fixed prices.

Such intrabrand restraints can enable the restrained dealers to promote the defendant's brand more aggressively and to provide services desired by consumers. Such marketing and services might expand sales of the defendant's brand at the expense of rival brands. The profit lost by sellers of rival brands as a result of enhanced interbrand competition is not antitrust injury, however, for it is inconsistent with the rationale for condemning a distribution restraint. Such restraints can violate the antitrust laws *because* they might injure purchasers of the defendant's brand, *not because* they might intensify interbrand competition. Enhanced interbrand competition is a virtue, not a vice, of an illegal distribution restraint.

Phillip E. Areeda et al., 2 Antitrust Law ¶382d.

### 3. Conclusion

For the foregoing reasons, we affirm the judgment of the district court in all respects.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0200P (6th Cir.)
File Name: 01a0200p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT



WATKINS & SON PET
SUPPLIES,
    *Plaintiff-Appellant,*

    *v.*

THE IAMS COMPANY,
    *Defendant-Appellee.*

No. 00-3243

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 95-00189—Walter H. Rice, District Judge.

Argued: March 15, 2001

Decided and Filed: June 20, 2001

Before COLE and GILMAN, Circuit Judges; ALDRICH, District Judge.

---

[*] The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

_____

**COUNSEL**

**ARGUED:**    Stephen D. Colbert, BROTHERTON & COLBERT, Highland Village, Texas, for Appellant.  Donald Jeffrey Ireland, FARUKI, GILLIAM & IRELAND, Dayton, Ohio, for Appellees.  **ON BRIEF:**  Stephen D. Colbert, William J. Brotherton, BROTHERTON & COLBERT, Highland Village, Texas, for Appellant.  Donald Jeffrey Ireland, Lisa M. Parilo, Mary L. Wiseman, FARUKI, GILLIAM & IRELAND, Dayton, Ohio, for Appellees.

_____

**OPINION**

_____

ALDRICH, District Judge.  This case arose out of the termination of a longstanding agreement between Watkins, the plaintiff below, and Iams, the defendant, under which Watkins distributed Iams's products in Michigan.  In summary, Watkins alleges that Iams made parol representations to Watkins that if it became an exclusive Iams distributor, Iams would make it the exclusive Iams distributor in a territory in Michigan when Iams moved to an exclusive territory distribution system.  Watkins alleges that it relied on those representations to its detriment, but that Iams terminated its distributorship agreement and gave an exclusive contract to a competing distributor.  The district court dismissed Watkins's claim under the Michigan Franchise Investment Law pursuant to Fed. R. Civ. P. 12(b)(6) and granted summary judgment on its claims under the Clayton Act, the Robinson-Patman Act, and the Sherman Act, and on its common law claims.[1]  We affirm the judgment.

_____

[1]Watkins does not appeal from the summary judgment on its claims for breach of contract or tortious interference, or its claims under the Robinson-Patman Act or the Sherman Act.  Therefore, these claims are

before expiration of the contract).  The contract between Watkins and Iams, on the other hand, was a contract for a fixed duration that terminated without action of either party.  For the foregoing reasons, we hold that the district court did not err in granting summary judgment on Watkins's claim for breach of the duty of good faith.

**F. Watkins's Claim Under the Clayton Act**

The district court granted summary judgment in favor of Iams on Watkins's claim that Iams violated § 3 of the Clayton Act, 15 U.S.C. § 14.  We affirm.

Assuming *arguendo* that Iams violated the Clayton Act by offering Watkins a 2% price discount in return for Watkins's agreement to sell Iams products exclusively, Watkins's claim must fail.  "The Sixth Circuit, it is fair to say, has been reasonably aggressive in using the antitrust injury doctrine to bar recovery where the asserted injury, although linked to an alleged violation of the antitrust laws, flows directly from conduct that is not itself an antitrust violation." *Valley Prods. Co. v. Landmark,* 128 F.3d 398, 403 (6th Cir. 1997).

To the extent Watkins is claiming that it suffered an injury as a result of termination of its distributorship, we find, as did the district court, that while a contract or tort claim might lie, an antitrust claim does not, because the injury to Watkins flows from the termination; the antitrust violation was not a necessary predicate of the injury.  *See Valley Prods., supra* at 404.  To the extent Watkins is claiming that it is now suffering as a result of the arrangement whereby Iams grants Wolverton exclusive territories and a discount in return for an agreement to sell Iams products exclusively, we agree with Professor Areeda's observation:

A defendant manufacturer's distribution restraints do not generally injure rival manufacturers or their dealers, and the loss of business that might occur is not antitrust injury.

discretion to decide not to agree if it determined it did not need the dealer's services in the area he proposed to locate his dealership. On these facts, the court held that there was no binding contract. *Id.* at 675-76. The rule of *General Motors* applies here, because the contract makes it clear that Iams retained discretion to refuse to renew if the terms proposed were not "mutually agreeable."

Also, it appears from the face of the contract that none of the terms of the proposed renewal had been agreed upon. As Farnsworth writes:

> In practice . . . parties do not usually make agreements to negotiate until the negotiations are well advanced . . . There will, of course, be occasional cases in which an agreement to negotiate will have been made at such an early stage of negotiations that a court could properly refuse to enforce it.

E. Allan Farnsworth, *Precontractual Liability and Preliminary Agreements: Fair Dealing and Failed Negotiation*, 87 Colum. L. Rev. 217, 268 (1987). Where, as here, the plaintiff can show no promise to make a deal on which it reasonably could have relied, the court will not allow recovery. *See id.* at 237 n. 73 (citing *Reprosystem B.V. v. SCM Corp.,* 727 F.2d 257, 265 (2d Cir. 1984)).

Watkins cites several cases for the proposition that Ohio common law "does not permit a party to terminate [a contract] in 'bad faith.'" (Br. at 51). But these cases involve unilateral *termination* by one party, rather than *expiration* of the contract in accordance with its explicit terms. *E.g., Randolph v. New England Mut. Life Ins. Co.,* 526 F.2d 1383, 1385 (6th Cir. 1975) (clause provided for termination before end of contract by either party on sixty days' notice); *Rees v. Bank Bldg. & Equip. Corp.,* 332 F.2d 548, 550 (7th Cir. 1964) (termination of employment contract with "no fixed duration"); *Zimmer v. Wells Mgmt. Corp.,* 348 F.Supp. 540, 542 (S.D.N.Y. 1972) (termination of employment contract

## 1. Facts

Iams is in the business of manufacturing and selling pet foods. For many years, Watkins was a non-exclusive distributor of Iams products in Michigan. In 1986 or 1987, Iams began to require Watkins (as well as its other distributors) to sign yearly written distributorship agreements. Until 1987, Watkins was the sole distributor of Iams products in Michigan, but in 1987, Wolverton, Inc. also began selling Iams products in the state.[2]

In 1989, Iams began offering its distributors a 2% discount on its products in return for a commitment from the distributors to sell Iams products exclusively. The discount was significant, given the low profit margins customary in the business. Watkins alleges that in 1990, Iams promised it that if it became an exclusive Iams distributor, Iams would grant it an exclusive sales territory in Michigan when Iams changed to a distribution system of exclusive territories. Watkins claims that it became an exclusive distributor in reliance on this promise. It entered into an exclusivity agreement in July 1990 and annually thereafter through 1993. Nevertheless, Iams notified Watkins in September, 1993, that it would not renew its distributorship contract, and the contract expired, in accordance with its terms, on January 31, 1994. Iams subsequently entered into an exclusive distribution contract in Michigan with Wolverton.

The contract of January 31, 1993 between Iams and Watkins contains the following provisions:

> Notwithstanding the appointment herein the Company [Iams] reserves the right for itself to sell Products within

---

not before us. *Enertech Elec. v. Mahoning County Comm'rs,* 85 F.3d 257, 259 (6th Cir. 1996).

[2] Wolverton was a defendant below. We granted a motion dismissing Iams's appeal as to Wolverton.

the Territory. In addition, the Company may appoint any other distributor to sell Products within the Territory. (§2.1).

This Agreement shall be effective on February 1, 1993, and shall automatically expire, without any further action by either party required, on January 31, 1994 unless earlier terminated as set forth in Section 4.2 or 4.3 or otherwise in accordance with the provisions of this Agreement. This Agreement may be renewed thereafter on terms mutually agreeable to the parties only in a writing signed by the parties hereto. . . . (§4.1).

The distributor [Watkins] shall: . . . (c) maintain in stock at all times an inventory of products in such quantities as in the Company's opinion, after consultation and review with the Distributor, either directly or through the Company's representative, are needed to meet sales requirements for the Territory. (§5.1).

With the exception of *Schedule I*, which may be unilaterally amended by the Company as provided in this Agreement . . . and except as otherwise provided in this Agreement, no change, modification or amendment of any provision of this Agreement will be binding unless made in writing and signed by the parties hereto. (§11).

This Agreement shall be governed by the laws of the State of Ohio (exclusive of its rules on conflict of laws) and the United States of America. (§13).

THIS AGREEMENT TOGETHER WITH THE COMPANY'S STANDARD TERMS AND CONDITIONS OF SALE REPRESENT THE ENTIRE AGREEMENT BETWEEN THE PARTIES AND SUPERSEDES ALL PRIOR, EXISTING, AND CONTEMPORANEOUS AGREEMENTS, WHETHER WRITTEN OR ORAL, BETWEEN THE PARTIES HERETO RELATING TO THE DISTRIBUTION OR SALE OF THE COMPANY'S PRODUCTS. ALL

Because the contract between Watkins and Iams is governed by the U.C.C., Ohio law imposes a duty of good faith in its performance. Ohio Rev. Code § 1301.09. The question is whether the renewal provision in the contract implies a duty to negotiate for a renewal in good faith in light of the contract's expiration provision. Few cases discuss the duty to negotiate the extension of a franchise in good faith. In *Vylene Enters., Inc. v. Naugles, Inc. (In re Vylene Enters., Inc.),* 90 F.3d 1472 (9th Cir. 1996), the franchise renewal clause provided that the franchisee had the right to extend the franchise agreement "on terms and conditions to be negotiated within said sixty (60) days." Thus, the court held,

> although the terms of the renewal provision did not give Vylene a guaranteed right to renew on a determinable basis, the provision obligated Naugles to negotiate in good faith concerning the terms and conditions of a renewal.

*Id.* at 1476. But in *Vylene,* the franchisee had an explicit right to renewal. The holding of *Vylene* is justified by the rule that a preliminary agreement may be binding when there is an overall agreement to enter into a binding contract. *See United Magazine Co. v. Prudential Ins. Co.,* 877 F.Supp. 1076, 1081 (S.D. Ohio 1995) (New York law); *Alpert v. Kodee Techs.,* 117 Ohio App.3d 796, 800-01, 691 N.E.2d 732, 735 (1997) (under Ohio law, relevant factors are whether parties manifested intention to be bound, and whether intentions are sufficiently definite to be enforced). In the instant case, there is, on the face of the contract, no manifestation of intent to reach a future agreement, but rather, only a provision that future renewals "may" be executed on "mutually agreeable" terms in writing. The case is more similar to cases such as *General Motors Corp. v. Keener Motors, Inc.,* 194 F.2d 669 (6th Cir. 1952). There, a car manufacturer and a dealer agreed that they would execute a contract if the dealer's proposal was acceptable to the manufacturer. The manufacturer promised to give preferential consideration to the dealer's proposal. But the manufacturer retained

alleged by the plaintiff as true, the plaintiff can prove no set of facts entitling him to relief. *Id.*

The parties devoted their arguments at trial and on appeal to two questions: (1) whether Watkins could show that its distributorship was a franchise within the scope of the MFIL; and (2) whether the choice of law provision in the written contract deprived Watkins of a remedy under the Michigan statute. We need answer neither of these questions. In *Cook v. Little Caesar Enters., Inc.,* 210 F.3d 653 (6th Cir. 2000), we held that a plaintiff who cannot prove reasonable reliance cannot recover under the MFIL. In *Cook,* the franchisee alleged that he was promised an exclusive territory and the right to open additional restaurants, and that the franchisor broke its promises. The written franchise agreement did not contain the alleged promises, but it did contain an integration clause. On these facts, we granted summary judgment for the franchisor. We held that the MFIL does require reasonable reliance. *Id.* at 659. We quoted with approval the Seventh Circuit's observation that "it is simply unreasonable to continue to rely on representations after stating in writing that you are not so relying." *Id.* (quoting *Hardee's of Maumelle, Ark., Inc., v. Hardee's Food Sys., Inc.,* 31 F.3d 573, 579 (7th Cir. 1994)). Because, for the reasons given above, we find as a matter of law that Watkins's reliance on Iams's parol promises was unreasonable, we hold that Watkins would be unable to prevail under the MFIL even if he can show the existence of a franchise and even if the choice of law provision in the written agreement does not bar his claim. Therefore, we hold that the district court did not err by dismissing the MFIL claim.

### E. Watkins's Claim Of Breach of the Duty of Good Faith

The district court granted summary judgment on Watkins's claim for breach of the implied duty of good faith and fair dealing. As noted above, we review summary judgments *de novo.*

SUCH OTHER AGREEMENTS ARE HEREBY TERMINATED, AND EACH PARTY HEREBY RELEASES THE OTHER FROM ANY AND ALL CLAIMS ARISING AS A RESULT OF OR IN ANY WAY RELATING TO THE RELATIONSHIP BETWEEN THE COMPANY AND THE DISTRIBUTOR UNDER SUCH OTHER AGREEMENTS OR AS A RESULT OF SUCH TERMINATION, WITH THE EXCEPTION OF CLAIMS BY THE COMPANY FOR MONEY DUE FOR GOODS AND SERVICES SOLD TO THE DISTRIBUTOR. THE UNDERSIGNED INDIVIDUALS ON BEHALF OF THE COMPANY AND THE DISTRIBUTOR, AS THE CASE MAY BE, HEREBY AFFIRM THAT THEY HAVE CAREFULLY READ THIS AGREEMENT AND FULLY UNDERSTAND THE TERMS CONTAINED IN THE AGREEMENT. (§16).

### 2. Discussion

### A. Choice of Law

The parties agree that Ohio law governs the claims for promissory estoppel and breach of the implied duty of good faith and fair dealing. Watkins argues that Michigan law governs its fraud claim and that the public policy of Michigan preserves its statutory claim under the Michigan Franchise Investment Law (MFIL) despite the choice of law provision in the contract. Iams argues that the district court properly applied Ohio law to the fraud claim and that because the parties chose Ohio law to govern their agreement, Watkins cannot prevail on its Michigan statutory claim.

We review choice of law rulings *de novo. Northland Ins. Co. v. Guardsman Prods., Inc.,* 141 F.3d 612, 616 (6th Cir. 1997). Because the case was transferred from the Eastern District of Michigan to the Southern District of Ohio pursuant to 28 U.S.C. §1404(a), we apply the choice of law rules of

Michigan, the forum of the transferring court. *Northland, supra* at 616. For the following reasons, we hold that the district court did not err in applying Ohio law to the fraud claim. We need not decide the choice of law problem presented by the MFIL claim, because we hold, *infra,* that even if the choice of law clause does not bar the MFIL claim, the district court did not err in dismissing the claim for failure to state a claim upon which relief could be granted.

Under Michigan law, a tort claim is governed by the law of the forum unless a "rational reason" exists to displace it. *Olmstead v. Anderson,* 428 Mich. 1, 29-30, 400 N.W.2d 292, 305 (1987). In *Imaging Fin. Servs. v. Lettergraphics/Detroit, Inc.,* 39 U.C.C. Rep. Serv.2d (CBC) 1116, 1999 U.S. App. LEXIS 2405 (6th Cir. 1999), an unpublished opinion, we held that under Michigan law, fraud is a tort claim, and that when an injury occurs in Michigan to a Michigan company, Michigan law would govern the claim despite a choice of law clause. *Id.* at *8-9. *Imaging Fin. Servs.* relied on *Allmand Assocs. v. Hercules, Inc.,* 960 F.Supp. 1216 (E.D. Mich. 1997). But in *Allmand,* the Court applied Michigan law not only because the effects of the tort were felt in Michigan, but also because the "parties agree[d] that Michigan law applies." *Id.* at 1223 n. 3. In the instant case, the parties do not so agree. Moreover, in *Allmand, id.* at 1222, and *Imaging Fin. Servs., supra* at *11, the allegedly fraudulent misrepresentations were misrepresentations of fact that induced the plaintiff to enter a contract. In the instant case, on the other hand, the fraud alleged is promissory fraud: Watkins alleges that Iams made promises of future performance that it did not intend to keep. The distinction between such a claim and a claim for breach of contract is so slight that the parties' agreement that Ohio law would govern their agreement, *i.e.,* their contract, is a sufficient reason to displace the law of Michigan and apply Ohio law to Watkins's fraud claim. Therefore, we conclude that the Court did not err by applying Ohio law to the claim.

Watkins's argument that Iams continued to make fraudulent representations after the execution of the agreement avoids the parol evidence rule, which relates only to prior representations. But because the contract is for the sale of goods that provides that modifications must be in writing, Watkins's argument runs up against Ohio Rev. Code § 1302.12(B), which provides: "A signed agreement which excludes modification or recission except by a signed writing cannot be otherwise modified or rescinded."

Finally, Watkins's argument that Iams's representations are not within the scope of the statutory U.C.C. parol evidence rule is without merit. The statute allows proof of course of dealing, course of performance, or usage of trade to "explain" or "supplement" the written agreement. But Watkins's evidence -- evidence of parol promises of an exclusive territory and of renewal -- does not explain or supplement the agreement; it contradicts the agreement. As noted above, the written contract explicitly permits Iams to "appoint any other distributor to sell Products within the Territory," and it explicitly provides for expiration of the contract on January 31, 1994, leaving renewal to future agreement of the parties.

For the foregoing reasons, we find that Watkins's reliance on Iams's representations was unreasonable as a matter of law, and therefore, that the district court properly granted summary judgment on Watkins's claims for fraud and promissory estoppel.

## D. Watkins's Claim Under the MFIL

The district court dismissed Watkins's claim under the Michigan Franchise Investment Law, Mich. Comp. Laws § 445.1501 *et seq.,* for failure to state a claim upon which relief can be granted. We review dismissals for failure to state a claim *de novo. Gao v. Jenifer,* 185 F.3d 548, 552 (6th Cir. 1999). We affirm a dismissal if, taking all the facts

faith, *infra,* clauses such as the renewal clause in this contract may sometimes create a duty to negotiate the renewal in good faith. But a clause leaving open the possibility of a *future* agreement affects neither the completeness nor the finality of the *present* agreement.

Since the written agreement between Watkins and Iams is a complete integration, the parol evidence rule applies. There are, however, exceptions to the rule. The exception on which Watkins most heavily relies is the rule that evidence of fraud in the inducement is not barred by the parol evidence rule. *Coal Resources, Inc. v. Gulf & W. Indus., Inc.,* 756 F.2d 443, 447 n. 2 (6th Cir. 1985); *accord Galmish, supra* at 28-29, 734 N.E.2d at 789-90. But "fraud in the inducement," in the sense intended in *Coal Resources* and *Galmish,* is a fraudulent misstatement of *fact* that induces a party to enter a contract, not a fraudulent promise of future performance that is within the scope of the subject matter of the written contract but that was not included in it.

> [T]he parol evidence rule does apply to . . . promissory fraud if the evidence in question is offered to show a promise which contradicts an integrated written agreement. Unless the false promise is either independent of or consistent with the written instrument, evidence thereof is inadmissible.

*Galmish, supra* at 30, 734 N.E.2d at 791 (citation and internal quotation marks omitted). There is no evidence in the record sufficient to bring this case within the rule of *Williams v. Edwards,* 129 Ohio App.3d 116, 124, 717 N.E.2d 368, 374 (1997), which permits claims of fraud despite the parol evidence rule when the promisor had no intention of honoring his promise and thus had actual fraudulent intent.[5]

---

[5] *See* Watkins Dep. at 246-279 *passim,* J.A. at 957-962.

## B. Applicability of the Uniform Commercial Code

The case appears to have been argued on the assumption that the contract is a contract for the sale of goods within the scope of Article 2 of the Uniform Commercial Code. We agree with the assumption. Whether the contract is a sales contract is of some importance in this case, because the parol evidence rule governing commercial contracts, codified at Ohio Rev. Code § 1302.05, differs from the common law rule, and because the significance of Watkins's allegations that Iams made parol representations after execution of the written contract depends on the application of Ohio Rev. Code §1302.12(B), a U.C.C. provision in derogation of the common law that governs oral modification or recission of written commercial contracts.

While we have on occasion discussed the classification of a distributorship agreement as a sales contract when deciding cases not governed by Ohio law, *see, e.g., AB Prods. v. Dampney Co., Inc.,* No. 89-1871, 1990 U.S. App. LEXIS 12465, at *6 (6th Cir. Jul. 24, 1990) (holding that under Michigan law, distributorship agreement without a quantity term was not a contract for the sale of goods); *Herman Bros. Sales Corp. v. Hill's Pet Prods.,* No. 88-1768, 1989 U.S. App. LEXIS 6600, at *6-7 (6th Cir. May 15, 1989) (holding that under Kansas law, distributorship agreement was not a contract for the sale of goods),[3] we know of no case decided under Ohio law that discusses the question whether a distributorship agreement is a contract for the sale of goods. The majority rule is that distributorship contracts are sales contracts. *See Sally Beauty Co., Inc. v. Nexxus Prods. Co., Inc.,* 801 F.2d 1001, 1005-06 (7th Cir. 1986); *Paulson, Inc. v. Bromar, Inc.,* 775 F.Supp. 1329, 1333 (D. Haw. 1991) (both listing jurisdictions in which the majority rule applies). The majority rule should apply in this case, because it is clear

---

[3] Our holding regarding Kansas law is doubtful. *See L&M Enters., Inc. v. BEI Sensors & Sys. Co.,* 45 F.Supp.2d 879, 885 (D. Kan. 1999), *aff'd* 231 F.3d 1284 (10th Cir. 2000).

from the text of the written agreement between Watkins and Iams that their relationship was primarily about the sale of pet food by Iams to Watkins, and Watkins's resale of the pet food to retail customers. One can imagine a distributorship agreement in which the service component predominates over the goods component, but in the typical case, as here, the service component will not predominate, and the majority rule will apply under Ohio law as under the law of most other jurisdictions.

## C. Watkins's Claims Of Fraud and Promissory Estoppel

The district court granted Iams's motion for summary judgment on Watkins's claims of fraud and promissory estoppel. We review summary judgments *de novo. Peck v. Bridgeport Machs., Inc.,* 237 F.3d 614, 617 (6th Cir. 2001). Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.*

Reasonable reliance is an element of both promissory estoppel and fraud. *See Nilvar v. Osborn,* 127 Ohio App.3d 1, 16, 711 N.E.2d 726, 736 (1998) (promissory estoppel); *Daup v. Tower Cellular, Inc.,* 136 Ohio App.3d 555, 568, 737 N.E.2d 128, 138 (2000) (fraud). On the facts of this case, we find that Watkins's reliance on Iams's representations was unreasonable as a matter of law. Therefore, we find no error in the district court's decision to grant summary judgment on the two claims.

In this case, the reasonableness of Watkins's reliance depends upon the effect of the integration clause. When a written contract is the final and complete statement of the parties' agreement -- when, that is, it is a complete integration -- the parol evidence rule prohibits the parties from introducing extrinsic evidence of the terms of their

agreement.[4] The rule is not a rule of evidence, but of substantive contract law. In other words, the parol evidence rule does not operate to prohibit proof of terms of the agreement; instead, it provides that parol terms are not terms of the agreement at all. *Galmish v. Cicchini,* 90 Ohio St.3d 22, 27, 734 N.E.2d 782, 788-89 (2000). If a written contract is completely integrated, it is unreasonable as a matter of law to rely on parol representations or promises within the scope of the contract made prior to its execution. *Bollinger, Inc. v. Mayerson,* 116 Ohio App.3d 702, 712-13, 689 N.E.2d 62, 69 (1996) (fraud); *Harris v. Equilon Enters., L.L.C.,* 107 F.Supp.2d 921, 936 (S.D. Ohio 2000) (promissory estoppel).

We find that the written agreement at issue here was a complete integration. Under Ohio law, the court determines whether a sales contract is completely integrated by considering the "four corners of the document" and evidence extrinsic to the writing. *Cincinnati Bell, Inc. v. Anixter Bros., Inc.,* 69 F.Supp.2d 982, 992 (S.D. Ohio 1999) (citing *Carmargo Cadillac Co. v. Garfield Enters., Inc.,* 3 Ohio App.3d 435, 445 N.E.2d 1141, 1142 (1982)). Here, § 16 of the agreement, quoted above, provides strong evidence that the parties intended their written agreement to be a complete integration. Watkins does not present extrinsic evidence to show otherwise. Instead, it merely argues that the renewal provision in the written agreement does not contain the terms of the proposed renewal, and that therefore the contract is only a partial integration–final, but not complete.

Watkins's argument is without merit. It is clear from the text of the renewal clause that the parties meant to make a final agreement and to leave the terms of a future agreement for later negotiation. This conclusion is made even clearer when one considers the integration clause. As we note in our discussion of Watkins's claim for breach of the duty of good

---

[4] There are exceptions to the parol evidence rule; the relevant exceptions are discussed *infra.*