**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0186n.06

Nos. 08-2072/08-2289

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Mar 24, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| ACME CONTRACTING, LTD., | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | |
| | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| | ) | |
| TOLTEST, INC., | ) | **O P I N I O N** |
| | ) | |
| **Defendant-Appellant,** | ) | |
| | ) | |
| | ) | |
| BERKLEY REGIONAL INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| **Defendant**. | ) | |

**BEFORE: NORRIS, CLAY, and SUTTON, Circuit Judges.**

**ALAN E. NORRIS, Circuit Judge.** The consolidated appeals in this diversity action involve (1) a contract dispute between plaintiff-appellee Acme Contracting, Ltd. ("Acme"), a contractor, and defendants-appellants TolTest, Inc., also a contractor, and Berkley Regional Insurance Company, TolTest, Inc.'s surety (collectively "TolTest"), and (2) a challenge to the issuance of a writ of garnishment by the district court following the entry of judgment in the contract dispute. The contract dispute arose out of work TolTest subcontracted to Acme relating to the demolition of and subsequent site work on two buildings located at the Georgia Technical Institute

1

Nanotechnology Research Center in Atlanta, Georgia. After conducting a bench trial, the district court entered a money judgment of $2,096,876.21 in favor of Acme.[1] The district court subsequently issued a writ of garnishment on the money judgment and denied TolTest's motion to stay execution of the writ. TolTest appeals the district court's judgment insofar as it awards Acme delay damages for breach of contract and damages for quantum meruit.[2] For the reasons that follow, we affirm the district court's judgment with respect to Acme's entitlement to an award of damages, but we remand for further proceedings on the very limited issue of the calculation of quantum meruit damages (for time and materials grading and shoring work) awarded outside the 01-Contract and delay damages awarded under the 01-Contract to determine whether double-counting occurred with respect to those discrete categories of damages.

## I.

In April 2006, TolTest entered into a contract with Whiting-Turner Contracting Company ("Whiting-Turner") to conduct hazardous waste abatement and demolition of the Electronic Research Building ("ERB") and the Neely Research Reactor ("Neely Reactor"), both owned by the Georgia Institute of Technology Nanotechnology Research Center.[3] TolTest then subcontracted to

---

[1]This figure includes $2,025,330.65 in damages, $44,812.04 in prejudgment interest under Ohio law, and $26,733.52 in interest under Michigan law.

[2]In its opening brief, TolTest also appealed the district court's issuance of the writ of garnishment and denial of TolTest's motion to stay execution of the garnishment. TolTest conceded at oral argument, however, that this Court's resolution of the issues on appeal concerning the contract claims moots the garnishment issue. Accordingly, we do not address TolTest's challenge to the district court's garnishment rulings.

[3]Neither the Georgia Institute of Technology nor Whiting-Turner is a party to this action.

Acme the portions of the Whiting-Turner contract ("Trade Contract 11000-01" or "01-Contract") involving demolition and related site work.

The agreement between TolTest and Acme was executed on June 12, 2006 in the form of a Purchase Order P001652 ("Purchase Order"). The Purchase Order included two attachments: (1) Attachment A: Subcontractor Services Agreement Terms and Conditions, and (2) Attachment B: Scope of Work. The Purchase Order also expressly incorporated the terms of Trade Contract 11000-01. These documents comprised the entire agreement ("Agreement") between TolTest and Acme. The Agreement provided that its terms could be altered, amended or appealed only by a duly executed written instrument.

Although the Purchase Order defined Acme's period of performance as May 30, 2006 to August 30, 2006, a "Project Schedule" prepared by TolTest and provided to Acme identified the start date of Acme's demolition work as May 19, 2006 and the end date as July 28, 2006. Acme began demolition on June 3, 2006 and completed it on October 11, 2006.

On February 1, 2007, Acme initiated this action, asserting claims against TolTest for breach of contract and quantum meruit.[4] Relevant to this appeal are the findings of fact and conclusions of law the district court made regarding Acme's allegations that TolTest caused multiple delays to Acme's demolition work and failed to pay Acme for additional work that was not part of the 01-Contract. On the breach of contract claim, Acme alleged that TolTest failed to perform the required abatement work on the ERB and Neeley Reactor in accordance with its own work plan, thereby

---

[4]Acme also raised other claims that are not implicated in this appeal.

delaying Acme's demolition work, and that Acme suffered monetary damages as a result of that delay. The district court agreed. The court identified three instances of TolTest's lack of diligence: (1) TolTest's multiple-day suspension of abatement work in the ERB while awaiting safety inspection and clearance from authorities to resume work after TolTest's crew caused a fire in that structure, thus delaying the start of Acme's demolition work; (2) TolTest's failure to secure necessary permits for removal of waste materials contained within the ERB walls that Acme demolished, which prevented Acme from moving the waste material and construction debris offsite in accordance with its planned work schedule; and (3) TolTest's failure to provide sufficient staff to complete its abatement work on the Neely Reactor, which caused Acme to change the methods it used to demolish that structure. The court found that Acme incurred damages of $1,088,715.15 as a result of TolTest's failure to conduct its work diligently. In reaching its judgment, the court considered and rejected TolTest's argument that the Agreement contained provisions prohibiting Acme from recovering delay damages. The court concluded that the provisions of the Agreement purporting to limit damages for delays caused by TolTest were void as against public policy under Ohio law.

On the quantum meruit claim, Acme alleged that, at TolTest's request, Acme performed certain grading and shoring work which was not part of the 01-Contract. TolTest did not pay Acme for the additional services rendered. The district court found that TolTest employee Wayne Lint had directed Acme to perform additional grading and shoring work that fell beyond the scope of the 01-Contract in anticipation of work that would be required under a separate subcontract, Subcontract

Number 11000-04 ("04-Contract"), then under negotiation.[5]  The court further found that Acme

performed the additional grading and shoring work and that the parties intended Acme to be paid for

this work on a time and materials ("T&M") basis.  Accordingly, the court concluded that Acme was

entitled to quantum meruit damages of $399,371.87.

Based upon its findings of fact and conclusions of law, the court ruled that Acme had

established by a preponderance of the evidence that it was entitled to total damages of $2,033,756.02

from the defendants.[6]

TolTest timely appealed.  As to the breach of conduct claim, TolTest claims that the district

court erred in finding that the Agreement incorporated the Project Schedule; in concluding that Ohio

statutory law barred enforcement of the terms of the Agreement that limit delay damages; and in

finding that Acme proved its delay damages with a reasonable degree of certainty.  As to the

quantum meruit claim, TolTest contends that the district court erred in finding that Acme performed

---

[5]Negotiations proved unsuccessful, and the parties did not, in fact, enter into the 04-Contract as they had expected.

[6]The court delineated the damages as follows:

1)      $408,869.00 for work performed under the 01-Contract;
2)      $399,371.87 for additional work performed on T&M basis at TolTest's request;
3)      Delay damages of $1,088,715.15, which are comprised of the following amounts: $272,005.58 in delay damages for the delay relating to Acme's work in the ERB; and $816,709.57 in delay damages for the delay relating to Acme's work in the Reactor; and
4)      $136,800.00 in interest that Acme had to pay as a result of TolTest improperly withholding payment from Acme.

Opinion, May 5, 2008, R. 64 at 30.

grading and shoring work outside the scope of the Agreement and in finding that Acme proved its

quantum meruit damages with a reasonable degree of certainty.

## II.

This appeal from a judgment following a bench trial involves both questions of fact and

questions of law. We review the district court's factual findings for clear error and its legal

conclusions *de novo*. *Pressman v. Franklin Nat'l Bank*, 384 F.3d 182, 185 (6th Cir. 2004); Fed. R.

Civ. P. 52(a) (6) ( "Findings of fact, whether based on oral or other evidence, must not be set aside

unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity

to judge witnesses' credibility."). The district court's application of state law is reviewed *de novo*.

*Int'l Ins. Co. v. Stonewall Ins. Co.*, 86 F.3d 601, 604 (6th Cir. 1996).

A. *Delay Damages*

With respect to Acme's breach of contract claim, TolTest maintains that the district court

committed clear error in granting Acme delay damages. In TolTest's view, the district court erred

in a number of its factual findings. Specifically, TolTest contends that the district court erred in

finding that the terms of the Agreement provide for a 74-day period for Acme's performance; that

the "progress chart" (which the district court called the "Project Schedule") established the dates for

Acme's performance obligations; that TolTest was responsible for securing the documentation for

hauling waste management debris; that Acme was, in fact, delayed at any time during the

performance of its contractual obligations; and that Acme was entitled to delay damages despite its

failure to comply with the "notice and approval" requirements of the Agreement. TolTest's arguments lack merit.

Whether the district court committed clear error in finding a performance period of approximately 74 days depends upon whether the court improperly concluded that the Project Schedule formed part of the parties' Agreement. TolTest contends that the district court ignored both the language of a stipulation identifying Acme's period of performance as May 30, 2006 to August 30, 2006 and the express terms of the Agreement providing for fluidity in the progression of the work.

Although the district court failed to explain how it identified a 74-day performance schedule, we conclude that the court discerned (as a matter of law) and resolved (as a matter of fact) an ambiguity contained in the Agreement concerning the dates of performance. "The question of whether the language of a written agreement is ambiguous is one of law." *Parrett v. Am. Ship Bldg. Co.*, 990 F.2d 854, 858 (6th Cir. 1993) (construing Ohio law). "However, the interpretation of such language, once held to be ambiguous, is a factual issue turning on the intent of the parties." *Id.* Proof of the parties' course of dealing may be used to explain or supplement the parties' written agreement. *See Watkins & Son Pet Supplies v. Iams Co.*, 254 F.3d 607, 614 (6th Cir. 2001) (interpreting contract under Ohio law).

Here, as noted above, the Agreement consisted of the Purchase Order, Attachment A, Attachment B, and, by express incorporation, the 01-Contract between TolTest and Whiting-Turner. The Purchase Order, dated May 25, 2006, and signed by Acme on June 9, 2006, established a 92-day

7

period of performance beginning May 30, 2006 and ending August 30, 2006.  However, Attachment

A contains a provision referring to a work schedule:

> The Work shall be performed *according to the schedule outlined by TolTest*, which may be modified per the instructions of the TolTest Project Manager. . . . Any extension of the contract completion date or any portions thereto which may become pertinent and critical in timing during the completion of the Purchase Order may only be granted by TolTest in writing, properly executed and definitively stating that an extension is granted.

Attachment A, ¶3 (emphasis added).

Previously, on or about May 10, 2006, TolTest had sent Acme a schedule setting forth the

projected start dates and duration for each phase of the work Acme was to perform under the

Agreement.  According to that document, which the district court called the "Project Schedule,"

Acme was to begin on-site work on May 19, 2006 and to complete it by no later than July 28, 2006.

Because Attachment A specifically referred to "the schedule outlined by TolTest," and because the

only work schedule outlined by TolTest that appears in the record provided a period of performance

that is inconsistent with the dates set forth on the Purchase Order, the language within the four

corners of the Agreement contained an internal ambiguity requiring reference to extrinsic evidence

to ascertain the parties' intent regarding Acme's performance schedule.  Accordingly, the court

properly considered the parties' prior course of dealing.

As factfinder, the district court determined that the parties intended to be bound by the dates

in the Project Schedule.  TolTest's argument that Acme was put on notice that the project dates were

fluid fails to acknowledge that the delays to Acme's work were not the result of a directive from

Whiting-Turner or caused by the conduct of other companies.  Rather, Acme's work was delayed

8

by TolTest's own conduct. As the district court observed, TolTest was required to complete its abatement work before Acme could demolish the structures. Because TolTest was the first contractor to perform on-site work, there were no other contractors present to interfere with the schedule. TolTest's fluidity argument is therefore unpersuasive. The court did not err in finding that Acme justifiably relied upon TolTest's project schedule in planning its work on the 01-Contract.

In light of the foregoing, we find no error in the court's determination that Acme had approximately 74 days to perform its obligations under the 01-Contract.[7]

Similarly, the district court did not clearly err in finding that TolTest was responsible for securing the documentation for hauling construction debris taken from the ERB. Attachment B states that "TolTest will be responsible for the hauling permits necessary for the removal of asbestos and other hazardous materials." At trial, Acme employee David MacDonald testified that the construction debris taken from the demolition Acme performed on the ERB contained hazardous materials. TolTest did not refute this testimony. TolTest was therefore obligated to secure the proper hauling permit by helping Acme obtain the necessary signature from Georgia Tech. Accordingly, the district court did not clearly err in finding that the delay resulting from TolTest's failure to obtain the signature and secure the permit entitled Acme to delay damages.

The district court also committed no clear error in finding that TolTest's conduct delayed Acme's work. In Toltest's view, Acme could have experienced delay only if it was prevented from

---

[7]We note that the district court found the agreed work schedule to be approximately–not precisely–74 days.

9

performing any work at all. According to TolTest, any recovery for delay claimed for days on which Acme was actually working would constitute double recovery in that it would permit Acme to recover both for the work it performed and for the delay it suffered. TolTest essentially misconstrues what constitutes delay. Courts have recognized that delay may also occur through lost efficiency, such as having to perform work out of sequence or to perform work in ways that use workers inefficiently. *See Cleveland Constr., Inc. v. Ohio Pub. Employees Ret. Sys.*, No. 07AP-574, 2008 WL 885841, at *3 (Ohio Ct. App. April 3, 2008) (discussing cases interpreting the concept of delay broadly to include loss of efficiency).

Here, the district court found that Acme was required to change the methods it used to demolish the Neely Reactor because TolTest did not complete its abatement work on schedule. Thus, merely because Acme worked on the days for which it claims delay relating to the Neely Reactor demolition does not mean that it was working as efficiently as it could have been were it not for the changed methods TolTest's delay required Acme to employ. Similarly, the fact that Acme performed other work after TolTest caused the fire in the ERB does not mean that Acme was not delayed. Rather, as the district court's opinion suggests, Acme was required to perform certain work out of sequence, resulting in a loss of efficiency that it would not have otherwise incurred. Accordingly, the district court did not clearly err in finding delay merely because Acme was not idle every day for which it claimed delay damages.

Finally, the district court did not clearly err in determining that Acme was entitled to delay damages despite Acme's failure to comply with the "notice and approval" requirements of the

Agreement. As discussed below, the district court correctly applied Ohio's statute prohibiting "no damages for delay" clauses when the cause of the delay results from the action or inaction of the contractor. By finding void and unenforceable the delay damages limitation of the Agreement, the district court did not clearly err in excluding from its consideration whether Acme complied with the "notice and approval" requirements.

B. *Application of Ohio's Statute Prohibiting Certain "No-Damages-for-Delay" Clauses*

In determining that Acme was entitled to delay damages, the district court applied Ohio's statutory bar against contract provisions that waive or preclude a contractor's liability for delay when that delay is caused by the contractor. The district court concluded that the Agreement's restrictions on damages for delays caused by TolTest were unenforceable.[8]

TolTest argues that the district court applied the statutory bar too broadly, erroneously bringing into its ambit all of the limitations on delay damages incorporated into the Agreement. In TolTest's view, the limitations requiring notice and approval and prohibiting recovery of damages for delays of less than four months merely define the circumstances under which delay damages will be recoverable. According to TolTest, no limitation in the Agreement waives or precludes recovery altogether.

Section 4113.62 of Ohio Revised Code provides, in relevant part:

> Any provision of a construction subcontract, agreement, or understanding, or specification or other documentation that is made part of a construction subcontract, agreement, or understanding, that waives or precludes liability for delay during the

---

[8]The parties agreed that Ohio law governed the contractual dispute.

course of a construction subcontract when the cause of the delay is a proximate result of the owner's or contractor's act or failure to act, or that waives any other remedy for a construction subcontract when the cause of the delay is a proximate result of the owner's or contractor's act or failure to act, is void and unenforceable as against public policy.

Ohio Rev. Code § 4113.62(C)(2).

Here, based upon the evidence presented at trial, and after reviewing the scant caselaw applying Ohio Rev. Code § 4113.62(C)(2), the court reached the following conclusion:

> [T]he contract provisions at issue in this case, which bar, limit or waive delay damages that are caused by the owner or contractor, are unenforceable under O.R.C. § 4113.62. That statute provides that any provision in a construction subcontract that waives or precludes liability for delay, when the cause of the delay is a proximate result of the contractor's act or failure to act, is void and unenforceable as against public policy. O.R.C. § 4113.62(C)(2). In this case, the contract provisions at issue include that any delay must be reported in writing and an "extension of time shall be the sole and exclusive remedy of Contractor for any such delays or suspensions, but only to the extent that a time extension is obtained from the Owner" (Ex. 44 at T-2; *See* Def.'s Br. in Opp. to Pl.'s Request for Delay Damages at 1), and that "No claims will be accepted for costs incurred due to delays caused by others except to the extent that such delays exceed four (4) months." (Exhibit 44 at T- 21). Thus, the contract as a whole precludes, limits or waives liability for delay, even when the cause of the delay is a proximate result of TolTest's actions or failures to act. The Court therefore concludes that these provisions are therefore void and unenforceable and do not preclude recovery of delay damages by Acme in this case.

Opinion at 28-29.

In applying the statute to the contract in this action, the district court considered three cases decided by Ohio courts which interpret the statute: *Dugan & Meyers Constr. Co., Inc. v. Ohio Dep't. of Admin. Servs.*, 864 N.E.2d 68 (Ohio 2007) ; *B.I. Chipping Co. v. R.F. Scurlock Co.*, No. 04AP-1219, 2005 WL 3484306 (Ohio Ct. App. Dec. 20, 2005) (unpublished); and *Cleveland Constr., Inc.*

12

*v. Ohio Pub. Employees Ret. Sys.*, No. 07AP-574, 2008 WL 885841 (Ohio Ct. App. April 3, 2008) (unpublished).

The district court correctly found *Dugan* inapplicable to this action because the statute was enacted after the contract at issue in that case was made. The district court also correctly distinguished *B.I. Chipping* from the facts of this case in finding that, by limiting the subcontractor's recovery for delays to the amount that the contractor received through a particular claims process, the *B.I. Chipping* contract did not entirely foreclose delay damages, whereas the limitations in this action, taken together, effectively preclude recovery. Further, although the district court did not mention them, two additional distinctions may be made: in *B.I. Chipping* (1) the parties agreed that the contractor did not cause the delays to the subcontractor's work; and (2) the subcontract did not contain any provision that the work left undone (the relocation of utility lines) needed to occur before the subcontractor was to begin its work. *See B.I. Chipping*, 2005 WL 3484306, at *3. By contrast, in this action, the delays to Acme's work were the result of TolTest's acts or failures to act, and the Agreement provided that the abatement, for which TolTest was responsible, would occur before Acme's work was to begin.

The district court did find *Cleveland Construction* instructive. In *Cleveland Construction*, as in this action, the contract contained provisions limiting the remedy for delay to an extension of time and requiring requests for such extensions to be submitted in writing. The court there found the provisions void and unenforceable under § 4113.62 based in part upon a recognition that

13

contractors who cause a project delay should not be permitted to escape liability for the consequences of their acts or failures to act. *Cleveland Constr.*, 2008 WL 885841, at \*4.

The district court here correctly adopted the rationale of the *Cleveland Construction* case to conclude that the provisions limiting the remedy for delay to an extension of time, requiring written notice and approval from the owner for any time extension, and allowing claims for costs incurred by delays caused by others only if such delays exceed four months–when considered together–operated to insulate TolTest from any liability for delays it caused to Acme's performance of its obligations under the contract. Consequently, the district court properly concluded that the limitations were void and unenforceable as against public policy under Ohio Rev. Code § 4113.62(C)(2).

C. *Proof of Delay Damages*

With respect to the amount of delay damages, the district court made the following findings of fact:

> The various delays that Acme encountered with respect to its work in the ERB caused Acme to incur additional costs totaling $272, 005.58. (Exhibit 215 A). Of that amount, $141,076.81 was due to TolTest's failure to assist [Acme] in securing the documentation for the demolition debris.
>
> . . . .
>
> With respect to the delay and interference caused by TolTest relating to the Neely Reactor, Acme incurred damages of $816,709.57. Of that amount, $107,091.50 was additional costs Acme incurred relating to the removal of the Dome, while the remaining portion was additional costs Acme incurred in performing the remainder of its work relating to the Reactor. (Exhibit 215 B & C).

Opinion at 10, 17.

Based upon those findings, the court stated that Acme had established by a preponderance of evidence that it was entitled to delay damages of $1,088,715.15, which figure the court derived by adding $272,005.58 in additional costs incurred resulting from delays relating to the ERB demolition to $816,709.57 in additional costs incurred resulting from delays relating to the Neely Reactor.

TolTest contends that Acme failed to provide proof of damages to a reasonable degree of certainty and that the district court erred by relying upon the documents submitted by Acme summarizing the daily delay charges. According to TolTest, those documents–and consequently the court's calculations--contained discrepancies in the dates of the delay, unsubstantiated charges, and claims of delay for days when Acme was actually working.

The district court used the figures provided in Exhibit 215 A, B & C to identify the award of damages. Opinion at 10, 17. With respect to damages, Acme employee Michael Bates testified at trial how he calculated the amounts Acme was claiming. TolTest makes much of a single statement that Bates made in which he asserted that the figures contained in Exhibit 215 A, B & C represent time when Acme should have been working but was not. (Trial Tr., Vol. 5, at 4.) Relying upon this statement, TolTest claims that delay damages cannot be awarded because the evidence shows that Acme claimed delays for days on which it was not idle. However, TolTest ignores the bulk of Bates' testimony and Exhibit 214 (Acme's claim for Equitable Adjustment, submitted to TolTest on January 2, 2007, and admitted as a joint exhibit at trial), both of which calculate the amount of damages claimed and explain that the additional delay costs assumed the form of not only

15

"down time" but also work inefficiencies. *See, e.g.*, Trial Tr., Vol. 4 at 86- 95; Vol 5 at 3-4, 11-16, 33-37; Exhibit 214. Although the district court used the figures contained in Exhibit 215 A, B & C to ascertain the amount of delay damages, the court's deliberations were informed by evidence of work inefficiencies. *See* Opinion at 13-16. As discussed above, the district court found that Acme was required to perform certain work on the ERB out of sequence and to change the methods it employed to demolish the Neely Reactor. These changes in Acme's work plan permitted Acme to continue working, to be sure, but they also resulted in a loss of efficiency.

TolTest assumes that delay occurs only when there is a period of idleness. TolTest misapprehends what constitutes delay, as we explain above. Because loss of efficiency is a species of delay, the district court properly considered evidence of work inefficiencies presented in Bates' testimony and contained in Exhibit 214. This evidence supported the damages calculations claimed by Acme in Exhibit 215 A, B & C. The court's acceptance of the figures contained in Exhibit 215 A, B & C as accurately portraying delay damages was thus based in part upon credibility determinations concerning the evidence of work inefficiencies in Bates' testimony and Exhibit 214. Accordingly, the court's findings on delay damages should be accorded great deference. *See Schroyer v. Frankel*, 197 F.3d 1170, 1173 (6th Cir. 1999) ("When the factual findings rest upon credibility determinations, this Court affords great deference to the findings of the district court.").

TolTest claims that such deference should not be accorded in this case because the figures in Exhibit 215 B & C are unreliable. As support for this contention, TolTest claims that Exhibit 215 B & C contain evidence of double-counting on July 19 and 20, 2006. TolTest argues that on these

dates Acme seeks recovery both for delay of demolition work on the Neely Reactor (Ex. 215 B) and for T&M work performed under the contract on the removal of the Neely Dome (Ex. 215 C).[9] The portion of the record to which TolTest directs us, however, does not support such a finding. On both days, Acme claimed labor costs and lodging charges for its T&M work but not for delay. See Ex. 215 C. Similarly, Acme identified equipment costs for its T&M contract work on the Neely Reactor Dome but listed different equipment costs for delay under the contract.[10] The delay costs Acme claimed for July 19 and 20, 2006 include no discernible double-counting.

Our review of the record, however, indicates that double-counting may have occurred on August 15, 2006, and from August 17-27, 2006, with respect to Acme's charges for employees, equipment, and incidentals, as set forth in Exhibit 215, and that Acme may have recovered those charges twice, once as delay damages under the 01-Contract and again as quantum meruit damages (for time and materials work for grading and shoring) outside the 01-Contract. Accordingly, remand on this very narrow issue is warranted.

D. *Quantum Meruit*

Regarding Acme's quantum meruit claim, TolTest argues that the district court erred in finding that the additional grading and shoring work that Acme performed on a T&M basis fell

---

[9]The T&M work on the Neely Reactor Dome was performed under the 01-Contract and should not be confused with the T&M grading and shoring work for which Acme claimed quantum meruit damages.

[10]Acme did list a "Miscellaneous Power Tool" cost of $150 for both delay and T&M on July 19 and 20, 2006, but the record offers no indication of whether the charge is for same set of miscellaneous powers tools.

outside the scope of the 01-Contract. TolTest further argues that Acme was required to obtain written approval for any additional work relating to "moving TolTest's dirt" and adjusting to a different compaction rate in grading the ERB site. These arguments are unavailing.

TolTest employee Wayne Lint testified at trial that he directed Acme to do the extra grading and shoring work on a T&M basis in anticipation of the 04-Contract. The district court did not clearly err in finding that the additional work was therefore was outside the scope of the 01-Contract and that TolTest was aware of the out-of-scope work Acme was performing. Moreover, the record supports the court's conclusion that TolTest neither objected to the daily T&M documents or monthly invoices submitted by Acme nor disputed that Acme had performed the out-of-scope work reported on those documents. In light of the above factual findings, the court did not clearly err in determining that Acme was entitled to the reasonable value of services rendered for the T&M work it performed in anticipation of the 04-Contract because that work was outside the scope of Acme's obligations under the 01-Contract.

The district court relied upon the figures provided in Exhibit 66 to assess quantum meruit damages of $399,371.85. Opinion at 18, 30. TolTest contends that the evidence Acme submitted at trial, which included both Exhibit 66 and Exhibits 6 and 7, fails to provide proof of quantum meruit damages to a reasonable degree of certainty. TolTest points to discrepancies between the T&M claims Acme made in these exhibits and the "Daily Field Observation Reports" Acme submitted to TolTest while on the job. According to TolTest, the daily reports indicate that Acme did not perform the additional work it claims to have performed on a number of days in the exhibit

summaries. TolTest claims that the district court failed to acknowledge and consider the conflicts between the two sets of documents. Further, TolTest asserts that Acme failed to obtain signed T&M tickets from TolTest to verify Acme's claimed work and that Acme failed to present testimony evidence from a witness who could discern from the work reports what work described therein constituted Acme's T&M labor and equipment costs.

As evidenced by the testimony of Acme employee David MacDonald, however, Acme did, in fact, submit daily T&M tickets to TolTest. TolTest presented no evidence to contradict the cost summaries in Exhibits 6, 7, and 66, nor did TolTest impeach Acme's witnesses on this matter, or offer evidence to show that TolTest never received the T&M tickets submitted by Acme. Finally, during closing arguments, TolTest deferred the issue of damages calculation to the court. To the extent that the record contains conflicting evidence, the district court resolved those conflicts in Acme's favor. Given the deferential standard accorded to such findings, the district court's assessment of the amount of quantum meruit damages will be upheld.[11]

### III.

For the foregoing reasons, the judgment is **affirmed in part and remanded in part** for further proceedings on the very limited issue of whether double-counting occurred for both delay damages under the 01-Contract and for quantum meruit damages (for time and materials work for

---

[11]The district court may, however, adjust this assessment on remand if it determines that double-counting occurred with respect to quantum meruit damages for T&M grading and shoring work outside the 01-Contract and for delay damages under the 01-Contract.

grading and shoring) outside the 01-Contract, with respect to Acme's charges for employees,

equipment, and incidentals on August 15, 2006, and August 17-27, 2006, as set forth in Exhibit 215.